[No. 25024. *En Banc.* May 22, 1934.]

CENTURY BREWING COMPANY *et al., Respondents,* v.
THE CITY OF SEATTLE *et al., Appellants.*[1]

*A. C. Van Soelen, Walter L. Baumgartner,* and
*John A. Homer,* for appellant.

*Henry T. Ivers,* for respondents.

*W. W. Mount, John E. Gallagher,* and *Bartlett Rummel, amici curiae.*

[1] Reported in 32 P. (2d) 1009.

STEINERT, J.—This is an action to enjoin the city of Seattle and its officers from collecting certain license fees and taxes imposed by city ordinance upon distributors of alcoholic beverages. Defendants demurred to the complaint as amended. Argument was then had before the court on plaintiffs' application for temporary injunction and on defendants' demurrer. At the conclusion of the hearing, the court entered an order granting a temporary injunction. The defendants have appealed.

Two questions are presented: (1) Whether the ordinance in question, No. 64111, is valid, and (2) if valid, whether it has been superseded by the Washington state liquor control act, chapter 62, Laws of 1933, Ex. Sess., p. 173, Rem. 1934 Sup., § 7306-1 *et seq.* We will discuss these questions in the order named.

The origin, scope and extent of the city's legislative power is rested upon the state constitution, certain statutes, and the municipal charter. Reference to these should therefore be made by way of introduction to the discussion.

Seattle is a city of the first class, having a population of more than twenty thousand inhabitants. By Art. 11, § 10 of the state constitution, such city is permitted to frame a charter for its own government, consistent with and subject to the constitution and laws of the state. When so framed and adopted by the electors in the manner required, it becomes the charter of the city and the organic law thereof. By § 11 of the same article, any city may make and enforce, within its limits, all such local, police, sanitary and other regulations as are not in conflict with general laws.

Rem. Rev. Stat., § 8966, enumerates under thirty-eight subdivisions the powers which such city shall have. Subdivision 32 reads as follows:

"To regulate the selling or giving away of intoxicating malt, vinous, mixed, or fermented liquors: Provided, that no license shall be granted to any person or persons who shall not first comply with the general laws of the state in force at the time the same is granted;"

This is immediately followed by subdivision 33, which confers authority

"To grant licenses for any lawful purpose, and to fix by ordinance the amount to be paid therefor, and to provide for revoking the same: Provided, that no license shall be granted to continue for longer than one year from the date thereof;"

Subdivision 34 provides for the regulation and carrying on, within the corporate limits, of all occupations of such nature as affect the public health or good order of the city or disturb the public peace. Subdivisions 35 and 36 seek to restrain, and provide for the punishment of, vagrants, mendicants and other disorderly persons, and to make regulations for the preservation of public morality, health and good order within its limits.

Rem. Rev. Stat., § 8981, bestows additional powers, in the following language:

"Any city adopting a charter under the provisions of this act shall have all the powers which are now or may hereafter be conferred upon incorporated towns and cities by the laws of this state, and all such powers as are usually exercised by municipal corporations of like character and degree, whether the same shall be specifically enumerated in this act or not."

Rem. Rev. Stat., § 8977, provides that the legislative powers of the city shall be vested in a mayor and a city council, to have such powers as may be provided for in its charter.

Whether these provisions be considered as a direct, complete and effective investiture of authority, or

whether they be considered merely as a dispensation or continuing offer available by acceptance on the part of the city, it is unnecessary to determine here. We quote these provisions simply to show their extent and comprehensiveness.

We will now refer to the pertinent provisions of the city charter. Art. IV, § 1, provides that the legislative powers of the city shall be vested in a mayor and city council, who shall have such powers as are provided therein. Section 18 provides that the city council shall have power by ordinance, and not otherwise, to do various things enumerated in detail in an extended series of subdivisions.

Subdivision 32 confers the power

"To license, tax, confine within limits of time and place to be by the city council prescribed, and to otherwise regulate the selling or giving away or other disposal of intoxicating, spirituous, malt, vinous, mixed or fermented liquors, and the collection of the license money therefrom for the use of the city: Provided, that no license shall be granted to any person or persons who shall not first comply with the general laws of the state in force at the time the same is granted; and provided further that the power of the city council shall be further subject to the limitations and restrictions hereinafter set forth."

This subdivision 32 then sets forth numerous limitations and restrictions with reference to the sale or disposal of liquor in saloon patrol districts and hotel liquor license districts, also with reference to the location and number of saloons to be permitted, the transfers and renewals of licenses, and various other matters.

Subdivision 33 confers power upon the council as follows:

"To authorize the granting of licenses for any lawful purpose, and to fix by ordinance the amount to be

paid therefor, and to provide for the revoking of the same; Provided, That no license shall be granted to continue for a longer period than one year from the date thereof.''

It will be noted that subdivisions 32 and 33 of § 18, Art. IV of the charter, as above quoted, are almost identical with subdivisions 32 and 33, respectively, of Rem. Rev. Stat., § 8966; further, that subdivisions 34, 35 and 36 of § 18, Art. IV of the charter, are almost identical in language with subdivisions 34, 35 and 36, respectively, of Rem. Rev. Stat., § 8966.

Art. IV, § 19, of the charter provides:

''The city council shall, in addition to the powers enumerated in the last foregoing section, have all other powers usually exercised by the legislative bodies of municipal corporations of like character and degree with the City of Seattle, and all powers which now are or may hereafter be conferred upon incorporated towns and cities by the laws of this state.''

The similarity, amounting almost to identity, between this section of the charter and § 8981 of the statute, *supra*, will also be noted.

If all of these various provisions, which we have just quoted or referred to, had been in effect at the time that this action was begun, there could be no question, so far as the present topic of discussion is concerned, as to the validity of the ordinance under consideration, and to which we will particularly refer in a moment. However, subdivision 32 of § 18, Art. IV, above quoted, was expressly repealed by vote of the people of Seattle on March 4, 1919, and it is this fact that gives rise to the attack on the ordinance.

On October 9, 1933, the city council passed the ordinance here in question, namely, ordinance No. 64111. The mayor vetoed the ordinance, but the city council thereafter, on October 24, 1933, passed it over the mayor's veto.

The ordinance provides, among other things, that all distributors of alcoholic beverages doing business in the city of Seattle shall obtain a license therefor, the fee for which shall be five hundred dollars per annum and, in addition thereto, certain fees measured by the amount of alcoholic beverages sold or distributed by the licensee, as follows: Two dollars per barrel having a content of from fifteen and one-half gallons to thirty-one gallons, and similar fees for other sized barrels and for bottles, according to content, and that such additional fees shall be payable by purchasing and fixing to the containers appropriate stamps supplied by the city comptroller.

The immediate question before us is whether the repeal by the people of Seattle of subdivision 32 of § 18, Art. IV of the charter, left the council wholly without power to pass any ordinance on that subject, in the absence of any subsequent amendment of the charter covering the control of the liquor traffic. It was the view of the trial court, as expressed in its memorandum opinion, that the repeal by the people was "a direction to the city council never to legislate upon any phase of the subject covered by the repeal paragraph."

We can not agree with the conclusion of the learned court. Of course, the council would have had no right to pass such legislation if, under the remaining provisions of the charter, it was not empowered to do so. But we think that the power of the council was ample under subdivision 33 of § 18, Art. IV of the charter, which authorized the council to grant a license for any *lawful purpose,* and to fix by ordinance the amount to be paid therefor; particularly, when that subdivision is read in the light of Art. IV, § 19, of the charter, which, in blanket form, conferred upon the council, in addition to the powers already enumerated in § 18, all

other powers usually exercised by the legislative bodies of municipal corporations of like character, such blanket authority being likewise provided by Rem. Rev. Stat., § 8981, *supra.*

In speaking of the effect of general grants of power upon grants of specific power, McQuillin in his work on Municipal Corporations, (2d. ed.) Vol. 1, § 370, p. 927, says:

"The general rule may be formulated thus: Where particular powers expressly conferred, are followed by a general grant of power, such general grant by intendment may include all powers that are fairly within the term of the grant, and which are essential to the purposes of the municipal corporation, and consistent with the particular powers. Otherwise stated, where the exercise of particular governmental powers may be fairly included in and authorized by general powers granted, 'the rule *expressio unius est exclusio alterius* is not generally applied to specific powers conferred to exclude powers that serve the purposes for which municipalities are organized where such powers are not inconsistent with other powers conferred or with limitations imposed by the charter or by statute upon the municipal powers.'

"Statutes, in effect, prescribed that, whenever the legislature has heretofore granted to any city, however incorporated, a general welfare clause, preceded or followed by specific grants of power, such specific grants shall not be construed as restrictions upon such general welfare clause, but such general welfare clause shall be given a liberal construction, to the end that the cities may exercise all powers granted therein or reasonably implied therefrom."

In its memorandum opinion, the trial court aptly said there could be no doubt that, if subdivision 33 of § 18, Art. IV of the charter, had stood alone, and subdivision 32 had never been in existence, then the council would have had power to license liquor traffic in all its branches. This, in our opinion, is exactly what the

repeal of subdivision 32 brought about. It left the charter as though subdivision 32 had never been included in it.

The real reason for the action of the people in repealing subdivision 32 is, as is well known, that, prior thereto, state and national legislation had made the sale of intoxicating liquor unlawful. In order that the charter might not seemingly empower the council to authorize the practice of unlawful acts, the electors, upon resolution submitted by the council, repealed subdivision 32. They thereby said, in effect, that the council should not thereafter grant licenses for a purpose that was unlawful. It can not be said that the people intended to, or that they in any way did, prevent the council from granting any license that thereafter might be lawful.

When the restriction against the use and sale of intoxicating liquor was removed by state and national legislation, the city had the power, under its charter as it then stood, to grant licenses for that, as for any other lawful purpose. It would present an anomalous situation if the city council, under its general authority, could grant licenses for all lawful purposes and could regulate the carrying on within its corporate limits of all such occupations as affect the public health and good order, and at the same time were prevented in any way from regulating or licensing an occupation whose effect upon the public morality, health, peace and good order was as great as, or probably greater than, that of any other occupation conducted within its corporate limits.

We are impelled to the conclusion that the repeal of subdivision 32 of § 18, Art. IV of the charter, operated to give to the charter, as it then stood, the same effectiveness as it would have had if subdivision 32 had never been included therein, and further, that the sub-

sequent passage of ordinance No. 64111 was a valid exercise of power by the city council under the charter.

The second question is whether the city's right to impose a tax of two dollars per barrel, as provided in the ordinance, has been superseded by the Washington state liquor control act. The pertinent section of that act, in so far as our present inquiry is concerned, is § 29 (Laws 1933, Ex. Ses., p. 190), which reads as follows:

"No municipality or county shall have power to license the sale of, or impose an excise tax upon, liquor as defined in this act, or to license the sale or distribution thereof in any manner; and any power now conferred by law on any municipality or county to license premises which may be licensed under this section, or to impose an excise tax upon liquor, or to license the sale and distribution thereof, as defined in this act, shall be suspended and shall be of no further effect: *Provided,* That municipalities and counties shall have power to adopt police ordinances and regulations not in conflict with this act or with the regulations made by the board: *Provided, further,* That all licenses now in force in the state of Washington for the sale of beer by the authority of any county, city or other municipal subdivision in the state of Washington, shall continue in force and effect for a period of sixty days after the effective date of this act and no longer; *And provided further,* That all persons lawfully in possession of any intoxicating liquor at the time this act takes effect shall have sixty (60) days from and after the taking effect of this act in which to dispose of the same." Rem. 1934 Sup., § 7306-29.

This act became effective on January 23, 1934, by virtue of an emergency clause. It will be observed that, by § 29, municipalities and counties are prohibited from licensing the sale or distribution of liquor and from imposing an excise tax thereon, and that any power in that respect theretofore conferred on any municipality or county is suspended. It will also be

observed that all licenses for the sale of beer in force at the effective date of the act are continued in force and effect for a period of sixty days after such date. The meaning of the section seems perfectly obvious. Existing licenses for the sale of beer are kept in force for the prescribed period, but the right of the city to impose any excise tax upon liquor is suspended.

There can be no question, in our opinion, that the so-called additional fees, including the fee of two dollars per barrel, constitutes an excise tax. That they are called *fees* for a license, is immaterial. The character of the ordinance is determined by its incidents and its obvious purpose. It is apparent from the provisions of the ordinance that these additional fees are imposed, not for the purpose of paying the cost of regulation, in the exercise of the city's taxing power, but for the production of revenue, under the exercise of the power to tax. As such and to that extent, at any rate, they constitute the imposition of an excise tax. *Pacific Tel. & Tel. Co. v. Seattle,* 172 Wash. 649, 21 P. (2d) 721; *New London v. Howe,* 94 Conn. 269, 108 Atl. 529.

It is our conclusion that the ordinance, No. 64111, to the extent that it imposes the so-called additional fees, provides for an excise tax and that the power of the city in that respect has been suspended by the liquor act.

The judgment is affirmed.

MILLARD, MAIN, BLAKE, TOLMAN, and MITCHELL, JJ., concur.

GERAGHTY, J. (dissenting)—I agree with the view of the majority that the city of Seattle had power under the existing provisions of its charter to enact the ordinance here challenged, but I am forced to dissent from

the court's conclusion upon the right of the city to collect a beer tax under outstanding licenses for the sixty day period following the passage of the state liquor control act. The saving clause of § 29 of the act is as follows:

"*Provided, further,* That all licenses now in force in the State of Washington for the sale of beer by the authority of any county, city or other municipal subdivision in the State of Washington, shall continue in force and effect for a period of sixty days after the effective date of this act and no longer." Rem. 1934 Sup., § 7306-29.

I read in this proviso the legislative purpose to preserve the *status quo* during the sixty-day period. The legislature was not a college of lexicographers and grammarians. It consisted of men and women selected from the body of the people, possessing a fair degree of common sense, and speaking the language of their constituents. The members of the legislature well knew that, since the passage of the Federal law permitting the sale of beer, the municipalities of the state had been collecting revenue through license taxes— calling these taxes excise or license fees makes no difference. In the light of this known condition, I cannot read into the proviso a purpose so futile as to save to the manufacturers of beer the benefits of outstanding licenses for the sixty-day period, while relieving them from payment of the fees upon which the licenses were conditioned.

In my humble opinion, the court, through a strained and over-refined construction, has needlessly deprived the municipalities of a revenue which the legislature intended they should have. This view, apart from the letter of the proviso, is reinforced by a consideration of the provisions of the liquor control act, which pro-

vides for payment of a share of the revenue arising from state operation to the municipalities.

In the ordinance before us, the beer tax consisted of two elements: (1) The flat initial fee of five hundred dollars; and (2) the barrel tax on the quantity sold. The payment of the five hundred dollars flat fee did not entitle the holder to make a sale without paying the additional tax. It may be conceded that the additional barrel tax was an excise; so might the initial five hundred dollar fee be called. The whole was an aggregate tax collected through a license system. The majority opinion over-emphasizes the excise aspect of the tax. I do not think it makes any difference whether the tax is called an excise or a license fee. The obligation of the licensees for its payment inhered in the license, and payment was the express condition on which the licenses were to be held.

BEALS, C. J., and HOLCOMB, J., concur with GERAGHTY, J.