The East Ohio Gas Co., Appellee, *v.* City of Akron et al., Appellants.

(No. 5557—Decided June 2, 1965.)

*Messrs. Buckingham, Doolittle & Burroughs,* for appellee.
*Mr. R. C. Sheppard,* director of law, and *Mr. Anthony Tuccillo,* for appellants.

Doyle, P. J.  The main question in this appeal from a judgment of the Court of Common Pleas of Summit County is whether the city of Akron is empowered to impose a tax on the net income of The East Ohio Gas Company, a public utility, operating as such within the municipal corporation, by virtue of a duly-enacted income tax ordinance.

In the year 1963 The East Ohio Gas Company requested a ruling from the Tax Commisioner of the city by asking whether it was required to file a declaration of estimated income for the year 1963 because of income which it expected would be derived from the supplying of natural gas to the inhabitants of the

city. The tax commissioner ruled that all net income derived by the company was taxable under the ordinance; and, as a consequence, a declaration of estimated income must be made. Appeal was taken by the company to the Board of Review of the city of Akron, which board, pursuant to hearing, entered its order in support of the tax commissioner's ruling.

An appeal from the order of the Board of Review of the city was taken to the Court of Common Pleas of Summit County, where the claim was made that the previous ruling was "erroneous and contrary to law by reason of a pre-emption of the same field of taxation by the state of Ohio. * * * that [the] provisions of the Constitution of Ohio, including Articles XIII and XVIII, prohibit the levying by municipalities of taxes of the same or similar nature as those imposed by the state of Ohio, and that there presently exists taxes with respect to gross receipts of public utilities under Title 57 of the Revised Code that are the same as or similar to those sought to be levied under city of Akron ordinance * * *."

Pursuant to trial upon the issues, the court entered its judgment holding that the order of the Board of Review was contrary to law; and, proceeding further, the court ordered a reversal of the order of the Board of Review, with directions to exempt the utility from income tax payments.

From this judgment, the city of Akron has appealed to this court, and presents the following assignment of errors:

"The Summit County Common Pleas Court erred in its decision by:

"1. Holding that the 3% gross receipts excise tax is similar to the one percent tax imposed by the city of Akron on the net income of the plaintiff-appellee and that there is no basic difference between the two.

"2. Holding that the pre-emption doctrine is applicable to this situation.

"3. Holding that the net profits tax under the Akron ordinance and a tax on the gross receipts of the same utility would be double taxation.

"4. Holding that a direct tax as a municipal income tax upon a public utility is an interference with the regulatory powers which the state has established for the control of public utilities.

"5. Holding that the city of Akron should be enjoined from enforcing the one percent income tax upon the plaintiff-appellee.

"6. By reversing the Board of Review of the city of Akron which held that the plaintiff-appellee is subject to the one percent income tax imposed by Akron Ordinance 1298-1962."

In this state, municipalities have the power to levy and collect income taxes in the absence of pre-emption by the Legislature of this field of taxation, and subject to the power of the Legislature to limit the authority of municipalities to levy taxes under Section 13, Article XVIII, or Section 6, Article XIII, of the Constitution of Ohio. *Angell* v. *City of Toledo*, 153 Ohio St. 179.

"The doctrine of pre-emption of a field of taxation by the state, as preventing occupation of such field by a municipality, is based on the apparent intention of the General Assembly, which is inferred from its occupation of a particular field of taxation. Thus, when the General Assembly does occupy a particular field of taxation, it may reasonably be inferred that it intends to exclude municipalities from such field. It has authority to do this under Section 13 of Article XVIII, and Section 6 of Article XIII, of the Ohio Constitution * * *." *Ohio Finance Co.* v. *City of Toledo*, 163 Ohio St. 81, at p. 83.

The provisions of the Ohio Constitution providing for the exclusion of municipalities from a field of taxation already occupied by the state, as above stated, are:

(Article XIII, Section 6.) *"The general assembly* shall provide for the organization of cities, and incorporated villages, by general laws, *and restrict their power of taxation,* assessment, borrowing money, contracting debts and loaning their credit, so as to prevent the abuse of such power." (Emphasis ours.)

(Article XVIII, Section 13.) *"Laws may be passed to limit the power of municipalities to levy taxes* and incur debts for local purposes, and may require reports from municipalities as to their financial condition and transactions, in such form as may be provided by law, and may provide for the examination of the vouchers, books and accounts of all municipal authorities, or of public undertakings conducted by such authorities." (Emphasis ours.)

Under authority of the above provisions of the Constitu-

tion, and *especially* the power given to the General Assembly to limit the power of cities to levy taxes, the General Assembly, in enacting the Ohio Municipal Income Tax Act, has ordered definite limitations upon a city's power to tax.

Section 718.01, Revised Code, provides, in part:

"No municipal corporation *with respect to that income which it may tax* shall tax such income at other than a uniform rate." (Emphasis ours.)

That section of the Code concludes with the following command:

"Nothing in Sections 718.01 to 718.03, inclusive, of the Revised Code, *shall authorize the levy of any tax on income which a municipal corporation is not authorized to levy under existing laws.*" (Emphasis ours.)

This Code provision obviously raises the question of what were the "existing laws" under which a city was not empowered to levy a tax on income?

In the interpretation of statutes, it is presumed that the Legislature knew the state of the law at the time of enactment, and it must be presumed that the Legislature knew of the so-called pre-emption doctrine as it had been developed over the years in this state. The statute was enacted with the knowledge of the General Assembly that a municipal corporation is not authorized to levy a tax in an area already occupied by the state. It seems apparent that with this knowledge the General Assembly wisely provided in Section 718.01, Revised Code, that a municipality shall not levy an income tax on income which the municipality was not theretofore or thereafter authorized to tax.

From what we have said above, it must be manifest that we are thinking in terms of whether pre-emption by express interdiction precludes the city from levying a tax on the net income of a public utility.

Under the home-rule amendment of the Constitution of Ohio, adopted in 1912, municipalities were granted authority to exercise all powers of local self-government. (Section 3, Article XVIII.) This grant of power includes the power of taxation, subject, however, to the limitation that the General Assembly may pre-empt a given tax field by an express interdiction or by implication when the state occupies the field. See: *State, ex rel. Zielonka, City Solicitor, v. Carrel, Aud.,* 99 Ohio St. 220; *Marion*

*Foundry Co.* v. *Landes, Aud.,* 112 Ohio St. 166; *City of Cincinnati* v. *American Telephone & Telegraph Co.,* 112 Ohio St. 493; *Firestone* v. *City of Cambridge,* 113 Ohio St. 57; and *City of Cincinnati* v. *Cincinnati Oil Works Co.,* 123 Ohio St. 448.

In the cases cited above, in most instances, the municipalities were attempting to levy the same type of tax which had already been levied by the state. See 9 Ohio St. Law Journal 72 *et seq.*

In the year 1946, the case of *Haefner, a Taxpayer,* v. *City of Youngstown,* 147 Ohio St. 58, was before the Supreme Court. The gist of the court's decision is reflected in paragraph three of the syllabus:

"Municipalities have power to levy excise taxes to raise revenue for purely local purposes; but under Section 13, Article XVIII of the Constitution, such power may be limited by express statutory provision or by implication flowing from state legislation which pre-empts the field by levying the same or a similar excise tax."

In that case, the court determined that the consumers utility tax of Youngstown was invalid even though it was not of the same general type as other taxes levied by the General Assembly. The ordinance imposed a tax of two and one-half percent on the net rate charged by public utilities for natural gas, electricity and water, and for local service and equipment furnished to telephone subscribers. The decision holding this tax invalid was based upon the facts that the state Legislature had exempted sales by a public utility from the retail sales tax, and that such exemption from the sales tax existed because public utilities are subject by statute to a state excise tax on their gross receipts. This decision, based upon facts partly shown above, gave rise to the rule that a municipality's power to tax may be limited "* * * by implication flowing from state legislation which pre-empts the field by levying the same *or a similar excise tax.*"

From those cases, commencing with the case of *State, ex rel. Zielonka, City Solicitor,* v. *Carrel, Aud.,* 99 Ohio St. 220, decided in the year 1919, emerged the doctrine of pre-emption as now carried on with some modification in the cases of *Angell* v. *City of Toledo* (1950), 153 Ohio St. 179; *Ohio Finance Co.* v. *City of Toledo* (1955), 163 Ohio St. 81; and *Benua* v. *City of Columbus* (1959), 170 Ohio St. 64.

The General Assembly of this state has lodged the regulation of public utilities in the Public Utilities Commission, an administrative board, governed by the statutes creating it and prescribing its operation.

Special statutes provide for taxation of public utilities in an entirely different manner than the system of taxation imposed upon corporations of a different character. Provision is made by statute for the establishment of a special system of accounts and records which do not contemplate a system sufficient to enable the computation of a tax imposed by a municipality.

There are no statutes extant which indicate that the General Assembly intended that public utilities should be taxed in any way other than that prescribed by state law. Inferentially the entire legislative course points to an intent that the taxing of public utilities should be a matter of state concern only.

The regulation of public utility rates is said to fall within the police power of the state.

"* * * The function of rate making is purely legislative in character, and the Legislature has designated the Public Utilities Commission as its agent to exercise this function * * *." 45 Ohio Jurisprudence 2d 236, Section 87, and cases cited in support of the text.

"In general, validly imposed taxes are properly included in the operating expenses of a public utility for rate-making purposes, and are to be deducted from the gross revenue of the utility in determining whether the net return is fair. * * *." 45 Ohio Jurisprudence 2d 259, Section 115.

Faced with these rules of rate making, it appears that a municipal income tax on net income would be directly reflected in the cost to the ultimate consumer within the municipality and would be tantamount to double taxation (a situation which has been condemned as odious on a number of occasions).

With respect to taxes imposed by the General Assembly of this public utility, we find that under Section 5727.38, Revised Code, an excise tax of two and thirty-five one hundredths per cent of gross receipts is imposed by the state, and under Section 5727.81, Revised Code, another tax of sixty-five one hundredth per cent of gross receipts is imposed.

These taxes are unique in the sense that the state is always assured of their payment, for the reason that the public utility

is promised a fair return on its investment by the state, which is continuously under the supervision of the Public Utilities Commission, and which commission must approve the rate of charge for services.

In respect to this tax, it appears to be a part of the comprehensive scheme of the General Assembly to regulate the affairs of public utilities through its agency, the Public Utilities Commission, which tolerates no interference from other areas of government. Furthermore, it is a tax similar in many ways to the city income tax, in that it is a tax on the same tax source; the one on gross receipts, and the other on net income; each of which must come from revenues received from the general public from the sale to the public of its product.

Directly answering the assignment of errors filed by the city of Akron, appellant, we hold that the trial court did not err in holding (1) "that the 3% gross receipts excise tax is similar to the one percent tax imposed by the city of Akron on the net income of the * * * [utility company]"; (2) "that the pre-emption doctrine is applicable to this situation"; (3) "that the net profits tax under the Akron ordinance and a tax on the gross receipts of the same utility would be double taxation"; (4) "that a direct tax as a municipal income tax upon a public utility is an interference with the regulatory powers which the state has established for the control of public utilities"; (5) "that the city of Akron should be enjoined from enforcing the one percent income tax upon the * * * [East Ohio Gas Company]"; and (6) "by reversing the Board of Review of the city of Akron which held that the * * * [East Ohio Gas Company] is subject to the one percent income tax imposed by Akron ordinance 1298-1962."

The judgment of the Court of Common Pleas will be, and hereby is, affirmed.

*Judgment affirmed.*

BRENNEMAN and HUNSICKER, JJ., concur.