[No. 38762.     En Banc.     November 30, 1967.]

MAKAH INDIAN TRIBE, *Appellant,* v. STATE TAX COMMISSION *et al., Respondents.**

*Ziontz, Pirtle & Fulle,* by *Robert Pirtle* and *Alvin J. Ziontz,* for appellant.

*Reported in 434 P.2d 580.

*The Attorney General, J. Richard Duggan* and *Timothy R. Malone, Assistants,* for respondents.

HILL, J.—The Makah Indian Tribe seeks to enjoin the application of the Washington state cigarette tax to cigarettes sold by wholesalers to retail outlets doing business on the Makah Indian Reservation. It is argued that by so applying the tax the state of Washington has interfered with Indian commerce in violation of the U.S. Const. art. 1, § 8, clause 3, which gives to the Congress the power "To regulate commerce . . . with the Indian tribes."

The trial court refused to grant the injunction and the Makah Indian Tribe appeals.

This tax, collected from wholesalers within the state of Washington, amounts to 11 cents upon each package of 20 cigarettes.[1] The tax is paid through the purchase of stamps from the Tax Commission, and such stamps in an appropriate amount must be attached to each package of cigarettes before the wholesaler distributes the same.

It is noted that, in its practical application, the Washington cigarette tax applies to and is paid by the wholesalers who distribute the cigarettes to retail outlets for resale. At the time the tax is paid and the tax stamps evidencing payment are affixed to a package, the cigarettes are the inventory of non-Indian wholesalers[2] conducting their business activities wholly outside of any Indian reservation; the cigarettes have neither been specifically identified as those to be sold on an Indian reservation nor as those to be sold at retail to Indians.

---

[1]The tax is made up of three separate taxes:

4 mills per cigarette as a tax "upon the sale, use, consumption, handling or distribution of all cigarettes." RCW 82.24.020.

1 mill per cigarette to be credited to the war veterans' compensation fund. RCW 73.32.130.

½ mill per cigarette to be credited to the public schools building bond redemption fund. RCW 28.47.440.

[2]Most of the wholesalers involved were located in Port Angeles, Washington.

We do not think this application of the tax can in any way be said to infringe upon the federal scheme of regulation and protection of Indian commerce.

Appellant contends, however, that even if the tax is not imposed directly upon Indian commerce, its ultimate effect of increasing the retail price of cigarettes paid by members of appellant tribe renders it an impermissible intrusion upon Indian commerce.

Our research has uncovered no case where the sphere of federal regulation of Indian commerce has been so widely drawn as to proscribe every state tax imposed anywhere along the progression from production to consumption which, as one of its ultimate results, increases the price paid by the consumer, whether Indian or non-Indian and whether on or off an Indian reservation. Were that the case, scarcely any tax which could be found to affect the ultimate consumer price of products sold upon Indian reservations would be free from the challenge that it interfered with the Congress' exclusive control of Indian trading on Indian reservations.

█ We think the states are prohibited only from imposing taxation which so directly regulates or substantially encumbers the area of Indian trading on Indian reservations as to represent interference with the federal policy of careful control and protection of Indian trade.

A statement made in *Minot v. Philadelphia, Wilmington & Baltimore R.R.*, 85 U.S. (18 Wall.) 206, 232 (1873), referring to the congressional power over interstate commerce, is instructive here.

> The tax imposed by the act in question affects commerce among the States and impedes the transit of persons and property from one State to another just in the same way, and in no other, that taxation of any kind necessarily increases the expenses attendant upon the use or possession of the thing taxed. That taxation produces this result of itself constitutes no objection to its constitutionality. As was very justly observed by this court in a recent case, "Every tax upon personal property, or upon occupations, business, or franchises, affects more or less the subjects, and the operations of commerce. Yet it is

not everything that affects commerce that amounts to a regulation of it, within the meaning of the Constitution."

The facts of this case distinguish it from *Warren Trading Post Co. v. Arizona Tax Comm'n,* 380 U.S. 685, 14 L. Ed. 2d 165, 85 Sup. Ct. 1242 (1965) relied upon by the appellant. The difference is apparent.

The Arizona tax which was successfully challenged in that case was applied directly to the "gross proceeds of sales, or gross income" of *federally licensed* Indian traders subject to a detailed scheme of regulations and restrictions promulgated by the Commissioner of Indian Affairs pursuant to congressional legislation. Those regulations, as specifically noted in a footnote to the opinion, are applicable only to activities on Indian reservations. The United States Supreme Court held that

> Insofar as they are applied to this federally licensed Indian trader with respect to sales made to reservation Indians on the reservation, these state laws imposing taxes cannot stand. (p. 691)

Footnote 18, at page 691 of the opinion, indicates the basis for the ruling was that,

> Congress in the exercise of its power granted in Art. I, § 8, has undertaken to regulate reservation trading in such a comprehensive way that there is no room for the States to legislate *on the subject.* (Italics ours.)

The opinion further explained:

> [S]ince federal legislation has left the State with no duties or responsibilities respecting the reservation Indians, we cannot believe that Congress intended to leave to the State the privilege of levying this tax. (p. 691)

We think the portions of the *Warren* opinion we have cited above indicate that the fatal feature of the Arizona tax statute was that it was directed specifically at and had a substantial effect upon reservation trading, an area which there had been fully occupied by federal legislative and administrative regulation.

The *Warren* ruling is not apposite here for the reason that the tax here involved does not represent state legisla-

tion "on the subject" of Indian trading, but rather upon the subject of the wholesale distribution activities carried on wholly outside of any Indian reservation.

The unfortunate circumstance of this case is that for years the Tax Commission of the state of Washington did not require the payment of the tax by wholesalers on cigarettes sold to retailers on the Makah Indian Reservation. (This was also true of other Indian reservations in the state.)[3] When the Tax Commission issued a letter regulation on July 20, 1965, requiring wholesalers to pay the tax and affix the stamps upon cigarettes sold to retailers on Indian reservations, it may have seemed that another of the inalienable rights of the Indians had been violated. We see no wrongful intervention with Indian rights or Indian commerce, but only the belated insistence that the law was applicable to cigarettes being sold by wholesalers to retailers, whether the latter were on or off Indian reservations.

■ The trial court found, and there was no exception to the finding,

Neither the plaintiff Tribe nor any of its members are cigarette wholesalers. The tax on cigarettes is not collected by the State of Washington from the Makah Tribe or from any members of that Tribe. It is collected only from wholesalers and distributors as a result of their doing business outside the boundaries of any Indian reservation. (Finding No. 5)

The trial court concluded that the tax complained of is not such a burden upon commerce with the Indian tribes as to violate article 1, section 8, clause 3 of the United States Constitution; that the incidence of the tax occurred outside of any Indian reservation and prior to the entry of the cigarettes into Indian commerce; and that its effect upon the Makah tribe, or any of its members, is "too indirect and remote to render it unconstitutional."

We are in accord with the findings and the conclusions of the trial court. The judgment is affirmed.

ALL CONCUR.

---

[3] This covered a period of some 30 years, from the first imposition of cigarette taxes in 1935 until July 20, 1965.