[No. 1273-1. Division One—Panel 1. March 12, 1973.]

P. LORILLARD COMPANY, *Respondent*, v. THE CITY OF SEATTLE, *Appellant*.

*A. L. Newbould* and *Jorgen G. Bader*, for appellant.

*Williams, Lanza, Kastner & Gibbs, DeWitt Williams*, and *Robert I. Betts*, for respondent.

CALLOW, J.—P. Lorillard Company, a distributor of cigarettes, brought an action for refund of business and occupation taxes paid under protest to the City of Seattle from

July 22, 1965, through July 24, 1967, together with accrued interest.

The taxes paid were measured as a percentage of gross proceeds derived from engaging in business within the city, including the gross proceeds of cigarette sales.

RCW 82.02.020 read, during the period with which we are concerned:

> The state preempts the field of imposing taxes upon retail sales of tangible personal property, the use of tangible personal property, conveyances, and cigarettes, and no county, town, or other municipal subdivision shall have the right to impose taxes of that nature.

Ordinance No. 72630, as amended, reads in pertinent part:

> There is hereby levied upon and shall be collected from and paid as hereinafter provided by every person on account and for the privilege of engaging in business activities, a license fee or occupation tax, sometimes herein referred to as the "tax," in amounts to be determined by application of rates given against value of products, gross proceeds of sale, or gross income of business, as the case may be, for the three calendar months next preceding the beginning of each quarterly period, as follows: . . .
>
> . . .
>
> (c) Upon every person engaging within this City in the business of making sales at wholesale or retail, except persons taxable under Sub-section (d) of this section; as to such persons, the amount of tax with respect to such business shall be equal to the gross proceeds of such sales of the business without regard to the place of delivery of articles, commodities, or merchandise sold, multiplied by the rate of one-tenth of one per cent.

The city states this is not a tax upon cigarettes as such but rather a tax upon the privilege of doing business within the city, which includes warehousing, storage, sale and delivery of cigarettes. The tobacco company takes the position that the state has preempted the field of taxation of cigarettes, and the city may not levy its business and occupation tax upon that activity.

The trial court's findings of fact reveal the primary busi-

ness of the plaintiff in Seattle is wholesaling cigarettes from the supply maintained at a public warehouse. Orders for the cigarettes are received and accepted or rejected at the plaintiff's North Carolina office and payment for the cigarettes delivered from the Seattle warehouse is received outside of Washington state.

The power of a municipality to support the performance of its functions through taxation is derived from the state. Article 11, section 12 of the Washington State Constitution provides:

> The legislature shall have no power to impose taxes upon counties, cities, towns or other municipal corporations, or upon the inhabitants or property thereof, for county, city, town, or other municipal purposes, but may, by general laws, vest in the corporate authorities thereof, the power to assess and collect taxes for such purposes.

The reservation to the state of the complete power to tax is presumed. *Tacoma v. State Tax Comm'n,* 177 Wash. 604, 612, 33 P.2d 899 (1934); *State ex rel. Tacoma School Dist. v. Kelly,* 176 Wash. 689, 30 P.2d 638 (1934); *Outlook Irrigation Dist. v. Fels,* 176 Wash. 211, 28 P.2d 996 (1934). Municipal corporations possess only such taxing power as has been granted to them by the state constitution or the statutes; and if there is a doubt as to whether a power has been granted, it must be denied. *Pacific First Fed. Sav. & Loan Ass'n v. Pierce County,* 27 Wn.2d 347, 178 P.2d 351 (1947). A city is a municipal corporation and as an agency of the state exercises only delegated taxing powers. *State ex rel. Pacific Tel. & Tel. Co. v. Department of Pub. Serv.,* 19 Wn.2d 200, 272, 142 P.2d 498 (1943).

It was said in *State ex rel. King County v. State Tax Comm'n,* 174 Wash. 668, 671, 26 P.2d 80 (1933):

> The power of taxation is an attribute of sovereignty residing in the state alone. Municipal corporations, as such, have no inherent right to levy taxes. If the power to tax is not conferred directly upon them by the constitution, it must be granted by the legislature. Our constitution makes no direct grant of the taxing power to

municipal corporations, but provides that the legislature may vest them with this power.

*See also Flint v. Stone Tracy Co.,* 220 U.S. 107, 55 L. Ed. 389, 31 S. Ct. 342 (1911).

The state legislature has granted to cities of the first, second, third and fourth class the power to impose a business and occupation tax. RCW 35.22.570, 35.23.440(9), 35.24.290(7) and 35.27.370(9).

The power of the City of Seattle to levy the business and occupation tax was upheld in *Pacific Tel. & Tel. Co. v. Seattle,* 172 Wash. 649, 21 P.2d 721 (1933), *aff'd,* 291 U.S. 300, 78 L. Ed. 810, 54 S. Ct. 383 (1934). The decision held that while a city, under granted powers, could impose license taxes either for the purpose of regulation or revenue, it could not enact regulatory ordinances upon subjects covered by state legislation. There a license tax imposed for the purpose of raising revenue was permitted since the power to impose such a tax was exercised within the limitations of the statutory authority. Where the state grants to a municipal corporation a power to tax, the grant is to be strictly construed. It is said in 16 E. McQuillin, *Municipal Corporations* § 44.13 (3d ed. 1972):

> The grant of any power to tax, made by the state to municipal corporations, will be, according to the rule accepted by virtually all the authorities, construed with strictness. A citizen cannot be subjected to the burden of taxation without clear warrant of law. Therefore, statutes authorizing the levy of taxes are to be strictly construed; they are not to be extended by implication, nor is their operation to be enlarged so as to embrace matters not specifically pointed out, though standing upon a close analogy. Stated briefly, in case of doubt a tax statute should be construed strictly in favor of the taxpayer and against the municipality.
>
> The power of taxation can be exercised only in the manner prescribed by law. If the authority of the municipality to tax is doubtful, the doubt must always be resolved against the tax. The presumption is that the state has granted in clear and unmistakable terms all that it has intended to grant, and municipal officers must be

able to show a warrant in words of the grant for whatever authority they assume to exercise.

(Footnotes omitted.)

██ When a state preempts a particular field of taxation, it may be inferred reasonably that it intends to exclude municipalities from such a field. 16 E. McQuillin, *Municipal Corporations* § 44.14 (3d ed. 1972). The term "preemption" is broader than the term "exemption." Preemption indicates a complete take-over of a field of taxation to the exclusion of all interference while an exemption is a special freedom from taxation imposed upon others. A preemption precludes an invasion, while an exemption grants a dispensation. The terms are used loosely and interchangeably at times so that the total context of a holding must be examined to discover its true purport. In this light, read *Columbia & P.S.R.R. v. Chilberg*, 6 Wash. 612, 34 P. 163 (1893), which held it within the power of the legislature to entirely exempt certain property from taxation and, if and when it did, such an exemption would deprive a municipality of power to impose any tax upon such property.

██ The "incidence" of a tax is its impact, effect or imposition upon the person, property or transaction that bears the ultimate money burden. *Webster's New International Dictionary* (3d ed. 1969). Where a state statute has preempted a field of taxation, the preemption makes no distinction as to where the legal incidence of a tax invading the field may be placed. If it invades the preempted area, it is null and void. *Columbus v. Atlanta Cigar Co.*, 111 Ga. App. 774, 143 S.E.2d 416 (1965). *See also Haefner v. Youngstown*, 147 Ohio St. 58, 68 N.E.2d 64 (1946); *East Ohio Gas Co. v. Akron*, 2 Ohio App. 2d 267, 207 N.E.2d 780 (1965).

The Seattle business and occupation tax is a tax on gross proceeds. The ordinance itself defines gross proceeds as follows:

The term "gross proceeds of sales" means the value proceeding or accruing from the sale of tangible personal

property and for services rendered without any deduction on account of the cost of property sold, the cost of materials used, labor costs, interest, discount paid, delivery costs, taxes, or any other expense whatsoever paid or accrued and without any deduction on account of losses.

RCW 82.04.070 similarly defines gross proceeds of sales as the value accruing from the sale of tangible personal property. The incidence or burden of a business and occupation tax is on the business itself. *Greyhound Lines, Inc. v. Tacoma,* 81 Wn.2d 525, 503 P.2d 117 (1972); *Commonwealth Title Ins. Co. v. Tacoma,* 81 Wn.2d 391, 502 P.2d 1024 (1972). Whether the tax is measured by value proceeding from sales or is upon gross income from sales, the tax is upon the cigarettes as such. The trial court noted that the city tax would be imposed upon the gross proceeds of sales of cigarettes in any calendar quarter and that if there were no sales of cigarettes there would be no tax other than the initial license fee of $1. It follows that the tax which the city attempts to impose must place an ultimate money burden upon the cigarettes borne by the commodity insofar as all considerations of consequence are concerned. As noted in *Budget Rent-A-Car v. Department of Revenue,* 81 Wn.2d 171, 500 P.2d 764 (1972), the business and occupation tax is not a tax on profit, net gain, capital gain, or sales but is a tax on the total money or money's worth received in the course of doing business. In this instance, the impact can only fall upon cigarettes since that *is* the business. *See Makah Indian Tribe v. State Tax Comm'n,* 72 Wn.2d 613, 434 P.2d 580 (1967); *Shulick-Taylor Co. v. Wheeling,* 130 W. Va. 224, 43 S.E.2d 54 (1947).

In considering different statutes enacted by the same legislative authority, all relating to the same subject matter, the sequence of their enactment should be considered in placing a judicial construction upon any one of the acts. *State ex rel. Washington Mut. Sav. Bank v. Bellingham,* 183 Wash. 415, 48 P.2d 609 (1935). The preemption statute, RCW 82.02.020, was first enacted in 1935 as were many of the state excise taxes set forth in RCW Title

82: The nature of the preemption statute was made apparent by the legislative action in 1970 when RCW 82.02.020 was amended to specifically state that

> Except only as expressly provided in RCW 67.28.180 and 67.28.190 [permitting certain counties and cities to levy excise taxes on lodging] and the provisions of chapter 82.14 RCW [permitting county and city retail sales and use taxes], the state preempts the field . . .

The legislature looked upon the preemption statute as an absolute barrier to municipal invasion of the fields it protected. The removal of that barrier required legislative action, which could not be breached by a lesser authority without leave from the sovereign. The necessity of amending RCW 82.02.020 to permit cities to acquire revenue in these preempted fields is reflected by the legislature's realization that an amendment to permit such an invasion was essential.

Further, in our opinion, the term "preempts the field" used in the statute is a broad term indicating an intent to retain for the state, to the exclusion of any other taxing authority, the right to impose taxes upon cigarettes. The encompassing scope of the further phrasing of the preemption statute forbidding other taxation upon retail sales or use of personal property shows an intent to exclude any possibility of an additional tax that would burden cigarettes. The initial direction of RCW 82.02.020 is to preempt taxation upon the transactions of sale or use of tangible personal property. The direction of the statute then shifts from forbidding taxation of these *transactions* to forbidding taxation of the *commodity,* cigarettes. We perceive an intent to prohibit any tax burden upon the commodity, its sale, its use or whatever transaction it may be which involves this commodity. The preemption statute is clear and unambiguous. When read as a whole, the prohibition against imposing any tax upon cigarettes considers the commodity as a totality and prohibits burdening the commodity indirectly as well as directly. *See* 3 C. Antieau,

*Municipal Corporation Law* § 21.01 (1971) and cases cited therein.

We also analyze the statute holding that the state legislature has reserved this source of revenue to itself and another taxing authority may not impose a tax impact upon the same subject matter without burdening the revenue source. Where a source of state tax revenue is burdened by the imposition of other taxation, the state revenue may be decreased ultimately when the total financial load imposed lessens the attractiveness of the commodity. This result was observed in *United Tavern Owners v. School Dist.*, 441 Pa. 274, 285, 272 A.2d 868 (1971), which discussed a like problem stating:

> when the state decides to enter a specific area for purposes of raising state revenues, a municipal tax in the same area could pose a threat, either by causing a diminution of the taxed activity or by increasing the costs of collection. Consequently, the state has preempted that area insofar as specially directed taxation is concerned.

RCW 82.24.020 imposes a 6½ mill per cigarette tax for general revenue purposes; RCW 73.32.130 imposes a 1 mill per cigarette tax to provide for the retirement of veterans' bonus bonds; and RCW 28A.47.440 imposes a ½ mill per cigarette tax to provide for financing state school construction bonds. An outside imposition upon this already burdened area could shake the concepts upon which the legislature based its enactment of these taxes upon cigarettes. The legislature has the right to retain as its sole province an area where numerous state obligations are dependent upon a particular source of tax revenue. It has a wide discretion to exempt property from taxation. *Libby, McNeill & Libby v. Ivarson*, 19 Wn.2d 723, 144 P.2d 258 (1943). It may determine that certain property shall pay no tax at all. *State ex rel. Atwood v. Wooster*, 163 Wash. 659, 2 P.2d 653 (1931).

The appellant relies upon *Ropo, Inc. v. Seattle*, 67 Wn.2d 574, 409 P.2d 148 (1965), which involved a city tax upon admission charges to establishments where liquor was sold.

In that action a state statute forbids a municipal excise tax upon liquor and another state statute enacted 10 years later authorized a city admission tax to be imposed on any person paying an admission charge to any place of entertainment. The court concluded that the city admission tax was not an "excise upon liquor" but an excise upon the person exercising the privilege of being admitted to the place of entertainment. The preemption provision of the liquor act was held to be inapplicable unless the ordinance imposed an excise tax upon liquor, and it was further held that the legislature intended the incidence of the authorized tax to be the admission to the place of entertainment. The holding concluded that the taxable occurrence was the admission charge, not the sale of alcohol that might occur thereafter; therefore, the preemption of taxation of liquor did not include this incidence within the field preempted, its burden being not upon the protected commodity, but upon a separated transaction. Had the impact of the tax been within the preempted field, the tax would have been struck down. *See also Century Brewing Co. v. Seattle,* 177 Wash. 579, 32 P.2d 1009 (1934).

Further of forceful persuasion to us is *Vinup v. Seattle,* 11 Wn.2d 630, 632, 120 P.2d 464 (1941), where the city sought to collect a license fee from the operator of a gas station for the purpose of raising revenue. The state gas tax statute stated that it was:

> in lieu of any excise, privilege or occupational tax upon the business of manufacturing, selling or distributing motor vehicle fuel, and no city, . . . shall levy or collect any excise tax upon or measured by the sale, receipt, distribution or use of motor vehicle fuel."

The question presented was whether this language preempted this field of taxation. It was held that the attempted tax was an excise tax imposed for the purpose of raising revenue, constituted a tax burden upon the business of selling and distributing the product and, therefore, encroached upon the field of taxation which the state had preempted.

The ultimate burden of the city business and occupation tax imposed upon the value proceeding or accruing from the sale of cigarettes is an invasion of the field of taxation that the state has retained to itself. The city has no power to do so.

The judgment is affirmed.

FARRIS and WILLIAMS, JJ., concur.

Petition for rehearing denied April 19, 1973.

Review granted by Supreme Court July 23, 1973.