**Robert G. HOLLIDAY, on behalf of himself and all other persons similarly situated, Plaintiff,**

v.

**XEROX CORPORATION, a New York corporation, the Xerox Corporation Profit Sharing Retirement Plan, and the Xerox Corporation Retirement Income Guaranty Plan, Defendants.**

**Civ. A. No. 81–60054.**

United States District Court, E.D. Michigan, S.D.

Oct. 26, 1982.

Supplemental Opinion Dec. 28, 1982.

James E. Brenner, William V. Lewis, Detroit, Mich., for plaintiff.

Clarence L. Pozza, Detroit, Mich., for defendants.

## OPINION

FEIKENS, Chief Judge.

Defendants[1] move for dismissal or summary judgment on Counts 1–3, inclusive, of this six-count action.[2] Count I alleges a violation of the Employee Retirement Income Security Act of 1974, Pub.L. 93–406, 88 Stat. 832 (codified at 29 U.S.C. §§ 1001 *et seq.* (1976)) ("ERISA"). Count II alleges breach of a contract between plaintiff and defendants. Count III alleges breach of a contract to which plaintiff is a third party beneficiary.

## FACTS

In 1962, defendant Xerox Corporation ("Xerox") acquired University Microfilms, Inc. ("UMI"). At the time, both companies had separate pension plans. In February 1965, the UMI Board of Directors and the Xerox Board of Directors agreed to merge

---

1. Plaintiff Holliday complains against Xerox Corporation, The Xerox Corporation Profit Sharing Retirement Plan, and The Xerox Corporation Retirement Income Guaranty Plan. Defendants do not distinguish among themselves, but assume that if one is liable, all are.

2. The three counts involved in this motion are all brought on behalf of classes. Plaintiff's motion to certify the classes is pending; the parties agreed that because this motion could moot the need to consider class certification, it should be considered first. The uninvolved counts are brought by Holliday individually.

the UMI Employee's Profit Sharing Plan ("UMI Plan") into defendant Xerox Corporation Profit Sharing Retirement Plan ("Xerox Plan"). The Xerox Plan is divided into two parts, referred to as the "Optional Account" and the "Retirement Account." Both accounts in the Xerox Plan and the UMI Plan are individual accounts; payments to each individual depend on the amount of money deposited on his behalf.

Pursuant to Paragraph Six of the merger document[3] which states in relevant part: "The interest of each participant in the assets of the trust under the Microfilm Plan as of December 31, 1964 ... shall be ... credited to his Optional Account under the Xerox Plan," the UMI Plan funds were transferred to the Optional Account of the Xerox Plan. Five other pension plans were merged into the Xerox Plan in a similar manner at various times.

The acquired company pension plan funds were merged into the Xerox Plan Optional Account, partly to insure that anyone who had a vested interest under his original plan stayed vested. For example, the UMI Plan provided for vesting after ten years, while the Xerox Plan Retirement Account then (in 1965) required fifteen years' service for full vesting. The 1975 Restatement of the Xerox Plan provides for full vesting in five years. Thus, the vesting problem no longer exists.

Under special circumstances, an individual may make a withdrawal from his Optional Account. No pre-retirement withdrawal may be made from the Retirement Account. In addition, an employee has some control over where his Optional Account money is invested. He has the choice of specified investment options, some of which may be lower yield and safer than others.

Effective July 1, 1975, Xerox adopted the "Xerox Corporation Retirement Income Guaranty Plan" ("RIGP"). RIGP guarantees that retired employees will have a minimum monthly income. The formula is complicated, but the parties agree that for the purposes of this motion, the monthly RIGP guaranty depends on an employee's salary at retirement and his years of service. The employee's social security payments and the amount payable from a life annuity purchased with the funds in his Retirement Account are subtracted from the guaranty. The remaining difference is the amount of the RIGP payment.

At various times shortly after the creation of RIGP, Xerox unilaterally transferred monies that had been put into the Optional Account when an acquired company's pension plan was merged into the Retirement Account of the Xerox Plan.[4] The transfer increased a retired employee's RIGP offset (by increasing the size of the pension payable from the Retirement Account) and thus reduced or eliminated his RIGP benefits. This served to lower the amount of money a retired employee would receive monthly from all defendants. The transfer and its effect on the size of a retired employee's pension check are at the heart of this lawsuit.

But for the creation of RIGP, the transfer would have had no effect on the size of a pension check.[5] Xerox gratuitously created RIGP; it is not obliged to guarantee a minimum pension to its employees. RIGP is funded entirely by Xerox.[6]

I.

In Count I, Holliday alleges that defendants violated ERISA by the establishment of RIGP and the allegedly related transfer of funds of acquired company pension plans

---

**3.** The document is titled "Amendment of the Profit Sharing Retirement Plan for the Salaried Employees of Xerox Corporation, Agreement of Trust Under the Profit Sharing Retirement Plan for the Salaried Employees of Xerox Corporation and Microfilm Employees' Profit-Sharing and Trust Agreement." It was adopted by the Xerox and UMI Boards of Directors on February 11 and 12, 1965, respectively.

**4.** The UMI funds transfer, however, took place in February 1978.

**5.** As Holliday points out, the transfer also affected investment flexibility and withdrawal availability.

**6.** RIGP, Article 3, "Contributions."

from the Optional Account to the Retirement Account of the Xerox Plan. Holliday argues that these actions violate § 403(c)(1) of ERISA, 29 U.S.C. § 1103(c)(1), and IRC § 401 because the transfer of funds and the adoption of RIGP resulted in a reduction of potential benefits to employees and that the reduction redounded to the financial benefit of Xerox.

Supporting its motion to dismiss Count I, Xerox argues, *inter alia,* that its actions did not violate ERISA § 403(c)(1), which provides in relevant part:

> The assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries . . .

■ The parties properly focus on whether the assets of the plan "inured" to Xerox when the funds were transferred and RIGP was established. Plaintiff alleges that the transfer from the Optional Account to the Retirement Account, in connection with the establishment of RIGP, violated § 403(c)(1) because it reduced the amount of money Xerox would have to contribute to fund RIGP. However, Xerox voluntarily established RIGP. By doing so, Xerox increased the total amount it would be required to pay to fund pension plans. When it transferred the funds from the Optional to Retirement Accounts, and used them as a RIGP offset, Xerox merely reduced the amount of that increase.

Xerox could have accomplished the same end by leaving acquired company funds in the Optional Account and mandating the offset in RIGP itself, instead it transferred them to an account which RIGP already provides should be offset. It should not be

penalized for choosing a different, simpler method to reach that same end.

It is permissible for a plan to provide for an offset of social security payments [7] and workers' compensation payments.[8] Thus, it seems illogical to argue that pension benefits received from one employer may not be offset against a guaranteed pension amount given by the same employer. In *Alessi v. Raybestos-Manhattan, Inc.,* 451 U.S. 504, 514–17, 101 S.Ct. 1895, 1901–03, 68 L.Ed.2d 402 (1981), the Supreme Court ruled that a plan could properly include an offset provision for workers' compensation payments, and that a state could not provide that such payments were not to be offset. Referring to the concept as "integration," the Court not only said that Congress had authorized it, but recognized that given the goal of insuring adequate retirement incomes in an economical manner, integration provisions are wisely promulgated.

## II.

In Count II, Holliday alleges the existence of a contract between the participants in the UMI Plan and Xerox regarding the transfer of funds from the UMI Plan to the Optional Account of the Xerox Plan. In Count III, he alleges that the participants in the UMI Plan have third party beneficiary status to a similar contract between Xerox and unnamed persons. Xerox moves for dismissal of Counts II and III, asserting that any contractual relationship has been preempted by § 514 of ERISA, 29 U.S.C. § 1144.[9] Xerox's theory is that any contract that may have existed was rendered unenforceable by the enactment of § 514.

Supporting this theory, Xerox relies on *Alessi v. Raybestos-Manhattan, Inc.,* 451

---

**7.** ERISA § 204(b)(1)(B)(iv), 29 U.S.C. § 1054(b)(1)(B)(iv).

**8.** *Alessi v. Raybestos-Manhattan, Inc.,* 451 U.S. 504, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981).

**9.** The relevant parts of § 514 provide:
(a) . . . the provisions of this subchapter and Subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan.

. . . . .

(c) For the purposes of this section:
(1) The term "State law" includes all laws, decisions, rules, regulations, or other State action having the effect of law, of any State

. . . .

(2) The term "State" includes a State . . . which purports to regulate, directly or indirectly, the terms and conditions of employee benefit plans covered by this subchapter.

U.S. 504, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981), which holds that a state may not dictate by statute that workers' compensation benefits are not to be integrated with ERISA pension payments (Integration works as an offset and reduces the Plan's liability to an individual).

However, the preemption problem is irrelevant to the existence of a valid contract because nothing in ERISA indicates that Congress intended to make contracts unenforceable.[10] Rather, if the state law is preempted, then the contract must be construed in accordance with federal law, in this case the federal common law of contract. There is no substantial body of federal common law of contract. Thus, state law will be looked to as a guide. *Woodfork v. Marine Cooks & Stewards Union,* 642 F.2d 966, 973 (5th Cir.1981); *Montgomery v. Lowe,* 507 F.Supp. 618, 620 (S.D.Tex.1981); *Shaw v. Kruidenier,* 470 F.Supp. 1375, 1382 (S.D.Iowa 1979), *aff'd,* 620 F.2d 307 (8th Cir.1980); *Bacon v. Wong,* 445 F.Supp. 1189, 1192 (N.D.Calif.1979). Whether ERISA preempts state law in this case makes no difference. If federal law applies, state law will be used as indicative of how the contract should be interpreted. Preemption would not make the contract a nullity.

Xerox's motion to dismiss Counts II and III on preemption grounds is denied. The alleged contract may be construed under either state common law or federal common law, which will look to state law as a guide. If federal law is applied in construing the contract, the Court will reach the same result that would be required if the contract was construed under state law.

### III.

Xerox moved for summary judgment on all three counts because they are time barred. In order for Xerox to prevail on this theory, regarding Counts II and III, ERISA and its three-year limitation of action provision [11] must apply and that the three-year period must have been exceeded. Holliday filed his complaint on March 27, 1981. Thus, if he knew of the actions which he claims violate ERISA before March 27, 1978, and if ERISA and its limitation section applies, his action is time barred.

According to ERISA's "Coverage" provision, 29 U.S.C. § 1003(a), ERISA applies only to employee benefit plans. Both "welfare plans" and "pension plans" are "employee benefit plans." 29 U.S.C. § 1002. Both the Xerox Plan and RIGP are "pension plans" as defined in 29 U.S.C. § 1002(2).[12] The document [13] which plain-

---

**10.** Preemption is "a doctrine which ousts *a state or other government* from the exercise of its *police power* in an area in which the power of the federal government is, by law . . . preeminent." *Owen v. Atlanta,* 157 Ga.App. 354, 277 S.E.2d 338 (emphasis in original), *aff'd,* 248 Ga. 299, 282 S.E.2d 906 (1981), *cert. denied,* —— U.S. ——, 102 S.Ct. 2235, 72 L.Ed.2d 846 (1982). "Preemption indicates a complete take-over of a field . . . to the exclusion of all interference . . ." *P. Lorillard Co. v. Seattle,* 8 Wash.App. 510, 507 P.2d 1212, 1216 (1973). Preemption does not mean, as Xerox maintains, that contracts are necessarily unenforceable; it merely means that federal, rather than state law, applies. In the absence of a direct conflict between state and federal law, there is no reason to assume that the result which would have been reached according to state law will not be reached via federal law.

**11.** ERISA's limitation of actions section, 29 U.S.C. § 1113(a)(2), provides that no action may be brought "three years after the earliest date (A) on which the plaintiff had actual knowledge of the breach or violation."

**12.** As defined by 29 U.S.C. § 1002(2), a "pension plan" is

> . . . any plan, fund, or program . . . maintained by an employer . . . to the extent that by its express terms or as a result of surrounding circumstances such plan, fund or program—
> (A) provides retirement income to employees, or
> (B) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond . . .

**13.** The document is captioned: "Amendment of The Profit Sharing Retirement Plan For The Salaried Employees Of Xerox Corporation, Agreement Of Trust Under The Profit Sharing Retirement Plan For The Salaried Employees Of Xerox Corporation, And Microfilm Employees' Profit-Sharing And Trust Agreement," and was agreed to by the Xerox and UMI Boards of Directors at meetings on February 11 and 12, 1965, respectively.

tiff claims gives him contract rights is an agreement ("the agreement") between Xerox, UMI and the Xerox Plan trustee to merge the two pension plans. To facilitate the merger, certain provisions of the Xerox Plan had to be amended. The amendments appear in paragraphs 8 and 9 of the agreement. They became part of the Xerox Plan and thus are covered by ERISA. However, plaintiff Holliday alleges a violation of paragraph 6 of the agreement, which provides in relevant part: "The interest of each participant in the assets of the trust under the Microfilm Plan as of December 31, 1964 . . . shall be . . . credited to his Optional Account under the Xerox Plan." [14] This provision is contractual and ancillary to the consolidation of the Xerox and UMI plans. Thus it is not covered by ERISA. *See Jervis v. Elerding,* 504 F.Supp. 606 (C.D.Calif.1980), which holds that a contract relating to post employment compensation is not covered by ERISA.

Because the merger agreement is not a pension plan under ERISA, ERISA's limitation of actions provision does not apply. Rather, the Michigan law of contracts, and its statutory limitation of actions provision, applies.[15]

On this ground the motion is likewise denied.

### ORDER

For the reasons set out in the accompanying opinion,

IT IS ORDERED that defendants' motion to dismiss, or in the alternative for partial summary judgment, is GRANTED regarding Count I of the complaint, which is hereby DISMISSED.

IT IS FURTHER ORDERED that defendants' motion to dismiss, or in the alternative for partial summary judgment, is DENIED regarding Counts II and III of the complaint.

**14.** Holliday reads into this language an obligation by Xerox to keep the funds in the Optional Account.

**15.** Michigan's general rule provides for a six-year limitation of actions period on contract claims. Mich.Comp.Laws § 600.5807(8).

### SUPPLEMENTAL OPINION

On October 26, 1982, I issued an opinion and order dismissing Count I of this six-count action.[1] Plaintiff now asks me to reconsider my decision. In the alternative, he asks that I amend the order by adding language which will permit interlocutory appeal. In a separate motion, he asks for an order of final judgment as to Count I.

#### I. *Reconsideration*

Local Rule 17(k) governs motions for reconsideration. No response is allowed. (Local Rule 17(k)(2)). Thus I must determine from plaintiff's submissions whether "a palpable defect by which the Court and the parties have been misled . . ." (Local Rule 17(k)(3)) has occurred.

Plaintiff raises two basic points. First he argues that the transfer of funds from the Optional Account to the Retirement Account violated ERISA § 403(c)(1) in and of itself, the transfer of funds notwithstanding. I did not rule on that question specifically. However, I ruled that the transfer and its accompanying offset were not violative of ERISA, it follows "by reasonable implication" (Local Rule 17(k)(3)) that the validity of the transfer standing alone was considered.

Second, plaintiff notes that Optional Account funds are employee funds. He contends that employee funds cannot be used as an offset. However, he cites no law, and I am aware of none, prohibiting employee funds from being used to offset RIGP's guarantee. Confronted merely with the bald assertion that employee funds may not be offset against the RIGP guarantee, I am unwilling to reconsider my decision.

#### II. *Interlocutory Appeal*

Plaintiff asks me to amend the order dismissing Count I by adding language stat-

**1.** In the opinion and the order, I denied defendants' motion to dismiss Counts II and III.

ing that it decided "a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation ...." 28 U.S.C. § 1292(b). This amendment would allow plaintiff to ask the Court of Appeals for permission to undertake an interlocutory appeal. Fed.R.App.P. 5(a).

Section 1292(b) sets out a four-part test: (1) The question involved must be one of "law"; (2) it must be "controlling"; (3) there must be substantial ground for "difference of opinion" about it; and (4) an immediate appeal must "materially advance the ultimate termination of the litigation." *Cardwell v. Chesapeake & Ohio Ry.,* 504 F.2d 444, 446 (6th Cir.1974). Clearly there is a question of law which controls—whether the transfer of funds from the Retirement to the Optional Account, and the accompanying use of the transferred funds as a RIGP offset are prohibited by ERISA. It is a question of law because there are no substantial disputed facts relating to the ERISA claim. I dismissed Count I because I found that ERISA does not prohibit the transfer and offset. If the transfer and offset is prohibited by ERISA, then plaintiff would be entitled to judgment. Thus the legal question is controlling.

There is also substantial ground for difference of opinion. This is a question of first impression regarding interpretation of an ambiguous statutory provision. *See Zenith Radio Corp. v. Matsushita Electric Industrial Co.,* 494 F.Supp. 1190, 1243 (E.D.Pa. 1980).

The final question is whether an immediate appeal "may materially advance the ultimate termination of the litigation." § 1292(b). Under my order, this litigation is already terminated for the members of the putative acquired companies class who are not members of the smaller (but wholly included) putative UMI class. If Holliday is permitted to take an interlocutory appeal on behalf of the members of the acquired companies class, resolution of their rights under ERISA may be decided more quickly than if no interlocutory appeal is allowed.

An immediate interlocutory appeal may materially advance the ultimate termination of this litigation. If plaintiff ultimately prevails on the contract claim (Counts II and III), there will have been findings of fact and a full analysis of all claims except Count I. If the Court of Appeals then disagrees with my decision to dismiss Count I, it will be necessary to reopen the proofs to determine the question of certification of the acquired companies class, and to reach a decision on the merits of Count I. This would likely entail evidentiary hearings to some extent duplicative of those conducted in determining the merits of the claim under Counts II and III. Any findings made on remand would be subject to review by the Court of Appeals a second time.

Conversely, if an immediate appeal is heard, the Court of Appeals will have the opportunity to rule on an expedited basis whether or not Count I states a claim upon which relief can be granted. If it does, the ERISA claim can be litigated along with all other claims in this action. There will be a full record supporting decisions on each count. If it then decides my decision is erroneous, it will not be necessary to remand the case for further findings of fact regarding Count I. Then I will certify an interlocutory appeal.

### III. *Final Judgment*

Plaintiff moves for the entry of final judgment on Count I pursuant to Fed.R. Civ.P. 54(b). Rule 54(b) gives the District Court discretion to enter final judgment on one "claim for relief" in a multiclaim action, or for less than all the parties in a multiparty action "only upon an express determination that there is no just reason for delay." Noting that the ERISA claim has been finally decided and that the number of potential plaintiffs has been dramatically reduced, plaintiff contends that it is appropriate to enter final judgment.

In *Curtiss-Wright Corp. v. General Electric Co.,* 446 U.S. 1, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980), the Supreme Court reaffirmed its decisions in the companion cases of *Sears, Roebuck & Co. v. Mackey,* 351 U.S.

427, 76 S.Ct. 895, 100 L.Ed. 1297 (1956), and *Cold Metal Process Co. v. United Engineering & Foundry Co.,* 351 U.S. 445, 76 S.Ct. 904, 100 L.Ed. 1311 (1956). Under these decisions, the District Court is to act as a dispatcher and use its discretion "to determine the 'appropriate time' when each final decision in a multiple claims action is ready for appeal." *Curtiss-Wright,* 446 U.S. at 8, 100 S.Ct. at 1465, *quoting Sears, Roebuck,* 351 U.S. at 435, 76 S.Ct. at 900.

However, in order to reach the discretionary phase of a Rule 54(b) motion,

[a] district court must first determine that it is dealing with a "final judgment." It must be a "judgment" in the sense that it is a decision upon a cognizable claim for relief, and it must be "final" in the sense that it is "an ultimate disposition of an individual claim entered in the course of a multiple claims action."

*Curtiss-Wright,* 446 U.S. at 7, 100 S.Ct. at 1464, *quoting Sears, Roebuck,* 351 U.S. at 436, 76 S.Ct. at 900.

My decision to dismiss Count I is a final judgment in two respects. It adjudicates all the claims of the members of the putative acquired companies class who are not members of the putative UMI class. They have no interest in the outcome of any further aspect of this litigation. A decision on a class action claim which dismisses "the complaint against the absent class members is a final judgment as to them." *Windham v. American Brands, Inc.,* 68 F.R.D. 641, 660 (D.S.C.1975), *rev'd on other grounds,* 539 F.2d 1016 (4th Cir.1976), *rev'd,* 565 F.2d 59 (4th Cir.1977) (en banc), *cert. denied,* 435 U.S. 968, 98 S.Ct. 1605, 56 L.Ed.2d 58 (1978).

This is also a final judgment on a cognizable claim for relief—the ERISA claim. "[T]he concept of a 'claim' under Rule 54(b) denotes 'the aggregate of operative facts which give rise to a right enforceable in the courts.'" *McIntyre v. First National Bank of Cincinnati,* 585 F.2d 190, 192 (6th Cir. 1978) (citations omitted). While Count I alleges some of the same facts as Counts II and III, the universe of relevant facts is much larger for them than for Count I. Count I alleges that the transfer and offset

violate ERISA. Counts II and III allege that there was a contract created prohibiting the transfer. To determine the contract claims it will be necessary to determine whether a contract was actually created. The significance of other claims "for Rule 54(b) purposes turns on their interrelationship with the claims on which certification is sought." *Curtiss-Wright,* 446 U.S. at 9, 100 S.Ct. at 1465. Severability of the decided and remaining claims is sufficient. *Id.*

[T]he relationship of the adjudicated claims to the unadjudicated claims is one of the factors which the District Court can consider in the exercise of its discretion. If the District Court certifies a final order on a claim which arises out of the same transaction and occurrence as pending claims, and the Court of Appeals is satisfied that there has been no abuse of discretion, the order is appealable.

*Cold Metal,* 351 U.S. at 452, 76 S.Ct. at 909.

While the Court of Appeals may "have to face the same issues on a subsequent appeal [of Counts II and III], this might perhaps be offset by a finding that an appellate resolution of the certified claims would facilitate a settlement of the remainder of the claims." *Curtiss-Wright,* 446 U.S. at 8, n. 2, 100 S.Ct. at 1465, n. 2. Here an appellate decision on Count I which is favorable to plaintiffs would probably lead to settlement of Counts II and III. This is because the relief asked in Counts II and III would be granted if plaintiff prevails on Count I.

Thus, I find that Count I states a different claim for relief than Counts II and III within the meaning of Rule 54(b). I further find that this is a multiple plaintiff action.

The District Court is to use its judgment as a dispatcher to determine whether there is any just reason for delay. *Curtiss-Wright.* As discussed above, the factual setting of Count I is similar to that of Counts II and III. However, only a small part of those facts relevant to a decision of Counts II and III are relevant for a decision on Count I. Further, I find that an appellate decision favorable to plaintiff on Count

I would likely instigate a settlement of the remaining counts. Thus I find Count I is ready for appellate review.

### IV. *Conclusion*

I am not convinced that there is a "palpable defect" in my decision to dismiss the ERISA claim as required for· motions to reconsider to be granted. (Local Rule 17(k)). Thus, plaintiff's motion to reconsider is denied.

Because my decision on ERISA decided "a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation ...." 28 U.S.C. § 1292(b). An interlocutory appeal, heard on an expedited basis by the Court of Appeals could lead to a settlement of this litigation. If my decision on Count I is remanded, I would need to take evidence only once. There would be no need to take evidence on Count I after full evidentiary hearings on Counts II and III have been concluded.

My decision on Count I is a final judgment on the ERISA claim. It is also a final judgment regarding the members of the putative acquired companies class who are not members of the UMI class. Further, because the ERISA claim is a legal one, arising from a smaller set of facts than the contract claims, final judgment, allowing an immediate appeal, would not violate the policy against piecemeal appeals.

An appropriate order is entered herewith.

### ORDER

For the reasons set forth in the accompanying supplemental opinion,

IT IS ORDERED that my order in this matter of October 26, 1982, be, and hereby is, amended by adding the following language:

"Dismissal of Count I involves a controlling question of law as to which there is substantial ground for difference of opinion. An immediate appeal from this order may materially advance the ultimate termination of this litigation.

"IT IS FURTHER ORDERED that final judgment be, and hereby is, entered for defendants and against plaintiff on Count I."