Gary L. CATTIN, and Thomas F. Omans, Individually, and as Representatives of a Class of Individuals Similarly Situated, Plaintiffs,

v.

GENERAL MOTORS CORPORATION, a Delaware Corporation, and Electronic Data Systems Corporation, a Texas Corporation, Defendants.

Civ. A. No. 84–8601.

United States District Court, E.D. Michigan, S.D.

June 28, 1985.

Jules B. Olsman, Woll, Crowley, Berman & Olsman, P.C., Southfield, Mich., for plaintiffs.

David M. Davis, Detroit, Mich., for defendant GMC.

Terence V. Page, Clark, Hardy, Lewis, Pollard & Page, P.C., Birmingham, Mich., for defendant EDS.

William J. Chadwick, Paul, Hastings, Janofsky & Walker, Los Angeles, Cal., for EDS.

## MEMORANDUM OPINION AND ORDER

FEIKENS, Chief Judge.

This action is brought by two former employees ("plaintiffs") of defendant General Motors Corporation ("GM"), who allege that GM wrongfully terminated their entitlement to early retirement benefits and improperly modified its offer of special recognition stock to them. Plaintiffs originally claimed that GM's termination of early retirement benefits violated the vesting and nonforfeiture requirements in the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1053(a) (1982), and constituted a breach of contract. After GM moved for summary judgment on these claims, plaintiffs conceded that the ERISA claim had no basis in law. I now consider GM's motion for summary judgment on the breach of contract claim.

Plaintiffs were employees of GM for 27 years. As GM employees plaintiffs were entitled to pension benefits under the General Motors Retirement Program ("the Program"). Among the benefits provided by the Program were certain early retirement benefits available to employees with 30 or more years of credited service. These "30-and-out" benefits are the subject of this dispute.

In September, 1984, GM announced a proposal to acquire defendant Electronic Data Systems ("EDS"). As the Program was written at that time, the transfer of GM employees to EDS would not have prevented those employees from continuing to receive credit for their service ("credited service") so that they could qualify for additional benefits under the Program. Specifically, the Program provided that credited service would include employment with one of GM's "directly or indirectly wholly-owned or substantially wholly-owned domestic or foreign subsidiaries."

On October 3, 1984, prior to completion of the acquisition, GM alleges that the Program was amended pursuant to GM's authority to "amend, modify, suspend, or ter-

minate the Program." GM Retirement Program for Salaried Employees, General Provision § 8(a). The amendment provided that employment with any "directly or indirectly wholly-owned or substantially wholly-owned subsidiary of the Corporation acquired or formed by the Corporation on or after March 1, 1984" would not be credited service "unless specifically approved by the General Motors Corporation Board of Directors." GM Retirement Program for Salaried Employees, Part A, Art. III, § 1(a)(1). At the same time, however, the Program appeared to protect the interests of employees with ten years of credited service by providing that:

> [n]otwithstanding any other provisions of this Program, in connection with the transition of General Motors employees to EDS, termination of employment with General Motors to accept employment with EDS shall not be considered as having terminated employment for purposes of this program provided such employee on his last day worked for General Motors has ten or more years of credited service.

GM Retirement Program for Salaried Employees, General Provision § 14(f).

GM's acquisition of EDS was completed later in October, 1984. GM plans to have EDS assume GM's data processing activities, and to effectuate this GM transferred approximately 7,000 of its employees to EDS as of January 1, 1985. Plaintiffs allegedly were informed that unless they went to work for EDS, their employment with GM or EDS would be terminated.

■ Plaintiffs argue that GM has discontinued their eligibility for 30-and-out benefits. Plaintiffs claim that this violates the Program's pre-amendment provision crediting service with GM's subsidiaries and also section 14(f)'s protection of the rights of transferred employees with ten or more years of credited service. While plaintiffs concede that these alleged rights are not protected by ERISA, they argue that ERISA does not preempt an action enforcing their contractual rights. I have previously accepted the view that contract actions are not preempted by ERISA, and I adhere to that position here. As I explained in *Holliday v. Xerox Corp.*, 555 F.Supp. 51, 55 (E.D.Mich.1982), *aff'd*, 732 F.2d 548 (6th Cir.), *cert. denied*, —— U.S. ——, 105 S.Ct. 294, 83 L.Ed.2d 229 (1984):

> [T]he preemption problem is irrelevant to the existence of a valid contract because nothing in ERISA indicates that Congress intended to make contracts unenforceable. Rather, if the state law is preempted, then the contract must be construed in accordance with federal law, in this case the federal common law of contract. There is no substantial body of federal common law of contract. Thus, state law will be looked to as a guide.

At a hearing on this motion, GM claimed that any contractual right plaintiffs had was lawfully terminated when the Program was amended on October 3, 1984, to provide that employment for subsidiaries acquired after March 1, 1984, would not constitute credited service. Plaintiffs responded that GM could not be granted summary judgment on this theory for several reasons. First, plaintiffs contended that this amendment had not yet gone into effect. Second, plaintiffs argued that even if the amendment was in effect, section 14(f) continued to protect the rights of employees with more than ten years of credited service with GM. Plaintiffs argued that this protection was a contractual right and also came within the doctrine of promissory estoppel because plaintiffs had relied on this protection in performing services for GM and later transferring to EDS.

■ In arguing that the amending language has no present effect, plaintiffs contend that the amendment is only a proposal and will not be binding until the Internal Revenue Service has determined that the amendments will not effect the Program's qualified status under the tax code. GM disputes this, claiming that the Board of Directors already adopted the amendments and they became effective October 3, 1984. GM has filed an affidavit of Richard Brewer, who is responsible for drafting the amending language for GM. Mr. Brewer

states that the amendments became effective on October 1, 1984, but then adds that "[o]nce the draft program language is finalized, a copy will be submitted to the Internal Revenue Service along with a request for favorable determination confirming that recent amendments do not adversely affect the program's qualified status under section 401(a) of the Internal Revenue Code, 26 U.S.C. § 401(a)." Affidavit of Richard L. Brewer, p. 2. Furthermore, GM indicated at the hearing that if the plan is not approved, GM will not be bound by the amending language. On this record, I can only conclude that there is a serious dispute as to the present effect of the amendment. The existence of this genuine issue of material fact precludes summary judgment.

■ Even if the amendment was in effect, this case raises serious issues concerning the non-statutory limitations, if any, on GM's power to unilaterally amend the Program. At the hearing on this motion, I expressed the view that *assuming* GM's amendment had gone into effect—excluding employment by EDS from "credited service"—it appeared that section 14(f) protected the rights of employees with ten or more years credited service. By letter of June 10, 1985, GM informed the Court that it has again amended the Program so that now even these employees will not accrue additional credited service. Hence, GM now asserts the rights to modify 30-and-out benefits for its employees even when those employees have completed more than 27 of the years of service required for such benefits and have transferred to GM's subsidiary with the alleged expectation that their eligibility for 30-and-out benefits was preserved by the Program.

In light of my finding that there is a question of fact as to the present effect of GM's amendment, I need not decide at this time whether such an amendment is unenforceable. I raise this possibility because GM is entitled to renew its motion for summary judgment if new developments eliminate the factual question about the finality of the amendment. If it chooses to do so, both parties should fully brief two issues that are raised by this discussion. First, as a matter of contract law, can GM limit entitlement to 30-and-out benefits as it has here where the effected employees have performed a substantial part of the required consideration? *See Finnell v. Cramet, Inc.,* 289 F.2d 409, 413 (6th Cir. 1961); *In re White Farm Equipment Co.,* 42 B.R. 1005, 1016–18 (N.D.Ohio 1984); Annot., 46 A.L.R.3d 464, 468 (1972) ("Employees who, at the time of discontinuance or amendment of a plan which authorized the employer to modify or terminate it for any reason, had not yet qualified for a pension, have been held not entitled to any benefits."). Second, where an employer expressly reserves the right to terminate or amend a pension plan in the plan document, can a claim of promissory estoppel be based on a promise in the same document to provide certain benefits? *See* 1A CORBIN ON CONTRACTS § 201 (1963) ("Before the rule [of promissory estoppel] can be applied, there must be a real promise to be enforced. Action in reliance on a supposed promise creates no obligation on a man whose only promise is wholly illusory. A sales agency agreement in which the principal specifies the terms on which cars are to be supplied, but makes no promise to supply any specific or ascertainable number of cars, and in which it is expressly provided that it shall be terminable at will, is not enforceable against the principal.").

In sum, as a genuine issue of material fact is raised by plaintiff's contract claim, summary judgment on that claim is unwarranted. At the same time, plaintiffs concede that their claim based on ERISA's vesting and nonforfeiture provision, 29 U.S.C. § 1053(a), is legally insufficient. Accordingly, GM's motion for summary judgment is GRANTED on the ERISA claim, but DENIED on the contract claim.

IT IS SO ORDERED.