[Cite as *Hubbard v. Defiance*, 2013-Ohio-2144.]


# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## DEFIANCE COUNTY


STEPHEN F. HUBBARD,

     PLAINTIFF-APPELLANT,
     -and-                  CASE NO.  4-12-22

TIMOTHY C. HOLTSBERRY,

     PLAINTIFF-APPELLEE,

     v.                      O P I N I O N

CITY OF DEFIANCE, OHIO,

     DEFENDANT-APPELLEE.


STEPHEN F. HUBBARD,

     PLAINTIFF-APPELLEE,
     -and-                  CASE NO.  4-12-23

TIMOTHY C. HOLTSBERRY,

     PLAINTIFF-APPELLANT,

     v.                      O P I N I O N

CITY OF DEFIANCE, OHIO,

     DEFENDANT-APPELLEE.

Case Nos. 4-12-22, 4-12-23

**Appeals from Defiance County Common Pleas Court
Trial Court Nos. 10-CV-10454 and 11-CV-41357**

**Judgments Reversed and Causes Remanded**

**Date of Decision:   May 28, 2013**


**APPEARANCES:**

   *Alan J. Lehenbauer*  for Appellant, Stephen F. Hubbard

   *William P. Lang and Suzanne F. Jucaitis*  for Appellee,
                   **City of Defiance**

   *Timothy C. Holtsberry*, Appellant


**PRESTON, P.J.**

   **{¶1}** Plaintiffs-appellants, Stephen F. Hubbard, Esq. and Timothy C. Holtsberry, Esq., pro se, appeal the Defiance County Court of Common Pleas' judgment entries granting the motions for summary judgment filed by defendant-appellee, the City of Defiance, and denying their cross-motions for summary judgment.  For the reasons that follow, we reverse.

   **{¶2}** Appellants are city council members who had previously utilized publicly-subsidized group health insurance provided by Defiance through Buckeye

Ohio Risk Management Association ("BORMA") at a cost to them of $38.00/month. On February 6, 2007, Defiance City Council enacted Ordinance No. 6768, Codified Ordinance No. 121.04, which required council members to pay 100% of their health insurance premium. In light of Ordinance No. 6768, the 2007 city budget did not include any appropriation for council members' BORMA premiums. (Complaint, Doc. No. 1).

{¶3} Appellant Hubbard elected to continue receiving BORMA group health insurance in 2007, costing $13,815.00 for himself and his dependents, and in 2008, costing $14,115.60 for himself and his dependents. (*Id*.). In 2009, Hubbard maintained BORMA group health insurance for himself for a total out-of-pocket cost of $5,392.08, and he obtained private insurance for his dependents costing $4,665.72. (*Id*.). Holtsberry also kept BORMA group health insurance during 2007 and 2008 but discontinued it in 2009. (Holtsberry Complaint, Trial Court Case No. 11-CV-41357, Ex. G). Appellants sent letters to Defiance requesting reimbursement of the monies they expended for BORMA group health insurance to no avail. (Hubbard Complaint, Doc. No. 1, Exs. A-C); (Hubbard Amended Complaint, Doc. No. 12, Exs. B-D).

{¶4} On February 2, 2010, Hubbard filed a complaint for declaratory judgment against Defiance in the Defiance County Court of Common Pleas. (Doc. No. 1). Hubbard requested that the trial court declare that Defiance illegally failed

to appropriate money in the budget for his insurance premiums; illegally enacted Codified Ordinance 121.04 in violation of Section 2.07 of the Charter; and, illegally terminated his BORMA group health insurance from January 2007 through December 31, 2009. (*Id.*). Hubbard demanded judgment in the amount of $40,678.56 as reimbursement for his BORMA group health insurance premiums from 2007 through 2009. (*Id.*). The case was assigned trial court no. 10-CV-40454.

**{¶5}** In the meantime, on February 9, 2010, Holtsberry filed a writ of mandamus in this Court seeking to compel the mayor, city council members, and other elected officials to adopt and approve an appropriation ordinance in the amount of $40,258.56 for reimbursement of his BORMA group health insurance premiums for 2007 through 2009. *State ex rel. Timothy C. Holtsberry v. The Honorable Robert Armstrong, Mayor of the City of Defiance, et al.*, 3d Dist. No. 4-10-03 (June 7, 2010). This Court denied the writ, however, concluding that Holtsberry had an adequate remedy at law. (*Id.*).[1]

**{¶6}** On April 7, 2011, Defiance filed a motion for summary judgment in trial court case no. 10-CV-40454. (Doc. No. 35). On April 22, 2011, Hubbard filed a cross-motion for summary judgment. (Doc. No. 38).

---

[1] A copy of our previous opinion appears in the record and provides more of the legislative history relevant to this case. (Holtsberry Aff., Doc. No. 40, attached).

{¶7} On May 25, 2011, after this Court denied mandamus relief, Holtsberry filed a complaint for declaratory judgment against Defiance. (Complaint, Trial Court Case No. 11-CV-41357). Holtsberry alleged that Defiance reduced his compensation during his term of office as Council President in violation of R.C. 731.07 and Section 2.07 of the Charter. (*Id*.). Holtsberry also alleged promissory estoppel based upon his reliance upon the City Law Director's opinions that an in-term salary decrease was unlawful. (*Id*.). Holtsberry sought judgment in the amount of $59,124.92 as reimbursement for his BORMA group health insurance premiums from 2007 through 2011. (*Id*.). The case was assigned trial court case no. 11-CV-41357.

{¶8} On November 21, 2011, the trial court ordered that Holtsberry's case, 11-CV-41357, be consolidated into Hubbard's case, 10-CV-40454, and stayed the motions in Hubbard's case pending resolution of Holtsberry's case. (Doc. No. 57).

{¶9} On March 13, 2012, Defiance filed a motion for summary judgment in Holtsberry's case. (Doc. No. 66). On March 29, 2012, Holtsberry filed a response and cross-motion for summary judgment. (Doc. No. 67).

{¶10} On May 2, 2012, Defiance filed objections to the affidavit of Fred Schultz, a former mayor of Defiance, alleging that portions of his affidavit were not made on personal knowledge as required under Civ.R. 56(E). (Doc. No. 77).

On May 8, 2012, Holtsberry filed a memo in opposition. (Doc. No. 79). On July 3, 2012, the trial court struck portions of paragraphs four, six, seven, and eight of Schultz's affidavit from the record. (Doc. No. 81).

{¶11} On September 14, 2012, the trial court granted Defiance's motions for summary judgment against Holtsberry and Hubbard, concluding that they were not entitled to BORMA group health insurance since BORMA was compensation, which was not established by ordinance as required under Section 2.07 of the Defiance Charter. (Doc. Nos. 82-83). The trial court also denied appellants' cross-motions for summary judgment as moot. (*Id.*).

{¶12} On September 17 and 18, 2012, Hubbard and Holtsberry, respectively, filed notices of appeal. (Doc. Nos. 84-85). Hubbard's appeal was assigned appellate case no. 4-12-22, and Holtsberry's appeal was assigned appellate case no. 4-12-23. Since the appeals concern similar facts and issues of law, we *sua sponte* consolidate them for purposes of our opinion. App.R. 3(B).

{¶13} Hubbard and Holtsberry now appeal raising eight and five assignments of error, respectively. The assignments of error Hubbard and Holtsberry raise can be grouped into three categories: procedural, evidentiary, and substantive. We will address Hubbard and Holtsberry's assignments of error in that order and combine them for discussion where appropriate.

*Procedural Issues*

**Holtsberry's Assignment of Error No. I**

**The trial court erred in sua sponte combining the Hubbard and Holtsberry cases.**

{¶14} In his first assignment of error, Holtsberry argues that the trial court erred by *sua sponte* consolidating his case with Hubbard's. While Holtsberry acknowledges that the facts are similar, he argues that their entitlement to BORMA group health insurance is different since they hold different offices. He also argues that Hubbard's case, unlike his, involved an allegation that Defiance violated the public records law.

{¶15} Whether to consolidate cases is within the trial court's discretion; and therefore, an appellate court will not reverse absent an abuse of discretion. *McDonnold v. McDonnold*, 98 Ohio App.3d 822, 827 (11th Dist.1994); *BancOhio Nat. Bank v. Schiesswohl*, 51 Ohio App.3d 130, 132 (9th Dist.1988); Civ.R. 42(A). An abuse of discretion is more than an error of judgment; rather, it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶16} Holtsberry argues that the cases were dissimilar because he held a different office than Hubbard. We disagree. The facts and the law surrounding these cases are very similar since they both involve the interplay between Codified Ordinance 121.04 and Section 2.07 of the Defiance Charter. Holtsberry's

compensation as president of council stems from Section 2.07 of the Charter just like Hubbard's compensation as a council member. Furthermore, Hubbard did not allege a public records violation as Holtsberry alleges. At most, it appears that Hubbard threatened to amend his complaint to allege public record violations during the settlement process. (Doc. No. 25, Ex A). Hubbard did not thereafter amend his complaint to add these allegations, however. Therefore, we cannot conclude that the trial court abused its discretion by consolidating the cases.[2]

{¶17} Holtsberry's first assignment of error is, therefore, overruled.

*Evidentiary Issues*

**Holtsberry's Assignment of Error No. II**

**The trial court erred in not considering testimonial evidence properly before the court.**

**Holtsberry's Assignment of Error No. III**

**The trial court erred in striking portions of the affidavit of Fred Schultz.**

**Hubbard's Assignment of Error No. II**

**The court erred by excluding the city law director's written opinions and by not accepting statements made by the city law director as admissions of defendant-appellee pursuant to evidence rule 801(D)(2).**

---

[2] As a further matter, it would be unreasonable for us to conclude that the trial court abused its discretion for consolidating the cases when we have *sua sponte* consolidated the cases for the purpose of writing our opinion.

{¶18} In his second assignment of error, Holtsberry argues that the trial court erred by excluding the affidavits of five former city council members since all of the affidavits, including that of former Mayor Schultz, were made upon personal knowledge. Holtsberry argues that if the contents of the affidavits were hearsay, they would nevertheless be admissible as statements against interest. In his third assignment of error, Holtsberry argues that the trial court erred by excluding portions of Schultz's affidavit from evidence for the same reasons offered in support of the other affidavits.

{¶19} In his second assignment of error, Hubbard argues that the trial court erred by excluding from evidence the city law director's legal opinions since the same are admissions by a party-opponent under Evid.R. 801(D)(2). Defiance, on the other hand, argues that the trial court did not abuse its discretion by excluding the law director's legal opinions since it is the trial court's province to determine legal issues, and Hubbard's estoppel claim, for which the legal opinions were offered, fails as a matter of law.

{¶20} A trial court has broad discretion in the admission and exclusion of evidence; and therefore, a reviewing court will not interfere with such a decision unless the trial court has clearly abused its discretion, and the defendant has been materially prejudiced. *Dardinger v. Anthem Blue Cross & Blue Shield*, 98 Ohio

St.3d 77, 2002-Ohio-7113, ¶ 193, citing *State v. Hymore*, 9 Ohio St.2d 122, 128 (1967).

**{¶21}** "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavit." Civ.R. 56(E). "'Personal knowledge' is '[k]nowledge gained through firsthand observation or experience, as distinguished from a belief based on what someone else has said.'" *Bonacorsi v. Wheeling & Lake Erie Ry. Co.*, 95 Ohio St.3d 314, 2002-Ohio-2220, ¶ 26, quoting Black's Law Dictionary (7th Ed.Rev.1999) 875. "A belief is no more than a conviction of the truth of a proposition which is subjectively held. It arises not from actual perception or knowledge, but by way of inference, or from evidence received or information derived from others." *Haack v. Bank One*, 2d Dist. No. 16131, \*2 (Apr. 11, 1997), citing Black's Law Dictionary (5th Ed.1979) 141. Therefore, beliefs are not a form of "personal knowledge" required by Civ.R. 56(E). *Id.* Statements contained in affidavits also cannot be legal conclusions. *State v. Licsak*, 41 Ohio App.2d 165, 169 (10th Dist.1974).

**{¶22}** Prior to rendering its summary judgment decision, the trial court granted, in part, Defiance's request to strike portions of Mayor Schultz's affidavit, finding that it contained inadmissible legal conclusions and belief statements

-10-

based upon hearsay. (July 3, 2012 Order, Doc. No. 81). Similarly, in its summary judgment decision, the trial court stated:

> * * * the Court will not consider many of the exhibits submitted by Mr. Holtsberry in support of his response to the city's motion for summary judgment and cross-motion for summary judgment. They are unauthenticated documents, and hearsay statements and legal conclusions in affidavits that are inadmissible and improper summary judgment evidence.

(Sept. 14, 2012 JE, Doc. No. 83).

{¶23} With regard to Mayor Schultz's affidavit, the trial court struck only those portions of the affidavit that were inadmissible. In particular, the trial court struck statements in Schultz's affidavit indicating that there was no delineation between full-time and part-time elected officials on the basis that this statement was not properly supported and an opinion. (July 3, 2012 Order, Doc. No. 81). The trial court also struck most of Schultz's averments concerning the law director's statements to city council and council's motivation in enacting legislation. (*Id.*). The trial court did not strike those portions of the affidavit which were admissible, but those which were statements of opinion, statements of hearsay, and legal conclusions. Therefore, we conclude that the trial court did not abuse its discretion in striking portions of Schultz's affidavit.

{¶24} Holtsberry argues that the trial court excluded the affidavits submitted by council members Upp, Hubbard, Butler, and Walter. Quite frankly, after reviewing the trial court's summary judgment decision, it is unclear whether the trial court excluded the affidavits in their entirety or only those portions of the affidavits that were inadmissible. The affidavits contained statements of fact that would have been admissible and statements of beliefs and legal conclusions that would not be properly admissible. Therefore, we cannot conclude that the trial court's decision was unreasonable based on the record. Nevertheless, we will consider those portions of the affidavits Holtsberry submitted that would have been admissible for purposes of our review of the summary judgment decision. *See Baggs v. Clarklift of Columbus*, 10th Dist. No. 95APE11-1501, *3 (Apr. 9, 1996), appeal dismissed by 77 Ohio St.3d 1419 (1996). Even if we were to assume that the trial court excluded the affidavits in their entirety, we could not sustain Holtsberry's assignment of error since he suffered no material prejudice, because Defiance stipulated to many of the facts presented in the affidavits, and the facts were established elsewhere in the record.

{¶25} Holtsberry's second and third assignments of error are, therefore, overruled.

{¶26} Hubbard's assignment of error lacks merit factually and legally. As a factual matter, the trial court did not exclude the entirety of the law director's

opinions from its consideration—only the portions that offered legal opinions concerning the issues presented in the case. (Sept. 14, 2012 JE, Doc. No. 82). The trial court objected to the admission of the legal opinions as expert witness testimony concerning the precise legal issues, but allowed the opinions to the extent they provided relevant facts and historical perspective. For example, the trial court mentions on page ten of its decision that Defiance's legislative history concerning Codified Ordinance 35.16 was "gleaned from the law director's opinion." (*Id.*).

{¶27} Legally, we find no abuse of discretion in the trial court's decision to disregard the law director's legal opinion with respect to its legal conclusions since it is ultimately the province of the court to interpret the law. "An expert witness is not permitted to give an opinion relating to the law, and a trial court that allows such an opinion abuses its discretion." *Witzmann v. Adam*, 2d Dist. No. 23352, 2011-Ohio-379, ¶ 62, citing *Kraynak v. Youngstown City School Dist. Bd. of Edn.*, 118 Ohio St.3d 400, 2008-Ohio-2618, ¶ 21. To the extent that Hubbard used the law director's opinion as part of his estoppel claim, equitable estoppel is inapplicable to a political subdivision when it is engaged in a governmental function. *Hortman v. Miamisburg*, 110 Ohio St.3d 194, 2006-Ohio-4251, syllabus. *See also Gamel v. Cincinnati*, 1st Dist. No. C-110613, 2012-Ohio-5152, ¶ 18 (retired city employees could not assert equitable estoppel claim against the

city for reducing their healthcare benefits). A city law director has a statutory duty to issue opinions when council members have legal questions pertinent to their legislative function; therefore, the law director's issuance of such opinions constitutes a governmental function. R.C. 733.54; *State ex rel. Cody v. Stahl*, 8th Dist. No. 83037, 2003-Ohio-6180, ¶ 14 (law director's legal opinions are governmental functions for which equitable estoppel does not apply). Consequently, the trial court did not err by excluding the law director's opinions as they related to Hubbard's equitable estoppel claim.

{¶28} Hubbard's second assignment of error is, therefore overruled.

**HUBBARD'S ASSIGNMENT OF ERROR NO. VII**

**The trial court erred by excluding indisputed [sic] public records.**

**HOLTSBERRY'S ASSIGNMENT OF ERROR NO. IV**

**The trial court erred in not considering documentary evidence properly before the court.**

{¶29} In his seventh assignment of error, Hubbard argues that the trial court erred by excluding "certain public records," which were self-authenticating or were authenticated in his affidavit. He also alleges that counsel for Defiance instructed the Council Clerk not to meet with him to authenticate the records. Similarly, Holtsberry, in his fourth assignment of error, argues that the trial court

erred by excluding documents he submitted during the summary judgment proceedings.

{¶30} Hubbard's arguments lack merit. Contrary to Hubbard's allegations on appeal, the trial court did not exclude the public records. (Sept. 14, 2012 JE, Doc. No. 82). The trial court found that it "*should* not consider the affidavits submitted by [Hubbard], *to the extent that they relate to matters not within the affiants' personal knowledge*, the old ordinances, and the health and dental care plan documents." (*Id*.) (Emphasis added). Nevertheless, the trial court decided that "since both parties cite to the documents which are unrefuted, the Court will indulge [Hubbard] and consider all evidentiary submissions." (*Id*.). Since the trial court considered the evidentiary submissions, we do not need to discuss Hubbard's allegation that the council clerk refused to authenticate documents. (Doc. No. 46).

{¶31} Hubbard's seventh assignment of error is, therefore, overruled.

{¶32} Next, we turn to Holtsberry's arguments concerning the documents he submitted in support of his summary judgment motion. We have already determined that the trial court appropriately struck portions of the Shultz affidavit, so we will not discuss that affidavit further. Also, we have already decided to consider the admissible portions of the Upp, Hubbard, Butler, and Walter affidavits for purposes of our decision herein since it is unclear whether the trial court excluded the affidavits in their entirety. So, we will not discuss these

affidavits any further. The other documents Holtsberry cited in his summary judgment motion were documents attached to his complaint, including Defiance Codified Ordinances, the Charter of Defiance, Resolutions, and legal opinions; and, documents he requested during discovery, including the BORMA health and dental plans, Defiance City Council Meeting Minutes, legal opinions from the City Law Director, and numerous Codified Ordinances, including several appropriation ordinances. (Doc. No. 73). Defiance objected to the admission of these documents since they were not properly authenticated under Evid.R. 902(4) and could not be considered under Civ.R. 56(C). (Doc. No. 74).

{¶33} Civ.R. 56(C) provides, in pertinent part:

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *No evidence or stipulation may be considered except as stated in this rule.*

(Emphasis added).

{¶34} The term "pleading" in Civ.R. 56(C) does not include attached exhibits; instead, the proper method for introducing such matters is to incorporate

them by reference in a properly framed affidavit pursuant to Civ.R. 56(E). *Skidmore & Assoc. Co., L.P.A. v. Southerland*, 89 Ohio App.3d 177, 179 (9th Dist.1993), citing *State ex rel. Corrigan v. Seminatore*, 66 Ohio St.2d 459, 467 (1981); *Biskupich v. Westbay Manor Nursing Home*, 33 Ohio App.3d 220, 222-223 (8th Dist.1986); *State ex rel. Freeman v. Morris*, 62 Ohio St.3d 107 (1991). "Documents submitted in opposition to a motion for summary judgment which are neither sworn, certified, nor authenticated by affidavit have no evidentiary value." *Green v. B.F. Goodrich Co.*, 85 Ohio App.3d 223, 228 (9th Dist.1993).

{¶35} Evidence Rule 901 governs authentication and provides, in relevant part:

The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

* * *

By way of illustration only, *and not by way of limitation*, the following are examples of authentication or identification conforming with the requirements of this rule:

*(1) Testimony of witness with knowledge.* Testimony that a matter is what it is claimed to be.

Evid.R. 901(A)-(B)(1) (emphasis added). Concerning the admissibility of public records in particular, Evid.R. 902(4) provides:

> Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to * * * [a] copy of an official record or report or entry therein, or of a document authorized by law to be recorded or filed and actually recorded or filed in a public office, including data compilations in any form, certified as correct by the custodian or other person authorized to make the certification * * *.

*See also* R.C. 731.42 (concerning the admissibility of municipal records).

{¶36} Upon review of the record herein, we find that the trial court abused its discretion by failing to admit the documents into evidence. Defiance argues that the documents were public records not properly authenticated by the custodian of the records as required under Evid.R. 902(4). Defiance's argument, however, fails to consider other means of authentication. Holtsberry and Hubbard both submitted affidavits indicating that the public records were true and accurate copies of the originals (Doc. Nos. 53-54). Holtsberry served as president of council and Hubbard served as a council member, so they had personal knowledge of many of these public records. Furthermore, Holtsberry, as council president, had the statutory duty to authenticate ordinances, bylaws, and resolutions of

council for legislative purposes. R.C. 731.20. Besides the affidavits submitted in support of the documents' authenticity, most of the documents Holtsberry used in support of his summary judgment motion were provided *by Defiance* during discovery. (Doc. No. 73, attached). Essentially, Defiance argued that the documents it provided during summary judgment were not trustworthy—we find this argument disingenuous.

{¶37} Additionally, after Defiance challenged the authenticity of Hubbard's documents, Hubbard contacted the council clerk to certify the public records as true and accurate copies of the original. (Doc. Nos. 44-46). Defiance then filed a motion for sanctions alleging that Hubbard violated the Ohio Ethics Rules for contacting a "represented party." (Doc. No. 47). Afterwards, Hubbard filed supplemental affidavits from Holtsberry and himself authenticating the public records and a motion seeking a hearing on the matter if the trial court wanted certified copies of the records. (Doc. Nos. 53-55). The trial court never held a hearing on this issue before granting Defiance summary judgment. In light of this history, it is not surprising that Holtsberry would attempt to authenticate the records by means other than the council clerk's certification. Aside from this, all of the documents the trial court found objectionable in Holtsberry's case, except the appropriation ordinances, it considered in Hubbard's case since both parties cited to the various documents in support of their arguments. We find the trial

court's decision to allow the documents in Hubbard's case but exclude them from Holtsberry's case unreasonable.

{¶38} After reviewing the facts of this particular case, we conclude that the trial court abused its discretion by excluding the documents submitted by Holtsberry in support of his motion for summary judgment. In particular, we find it unreasonable that the trial court considered many of these same documents in Hubbard's case but did not consider them in Holtsberry's case when the cases were consolidated and concerned the same issues.

{¶39} Holtsberry's fourth assignment of error is, therefore, sustained.

*Substantive Issues*

**Hubbard's Assignment of Error No. V**

**The trial court erred by finding that plaintiff-appellant's health insurance premiums were not established by ordinance.**

**Hubbard's Assignment of Error No. IV**

**The trial court erred in finding that the city charter does not prohibit an in-term salary reduction of council members.**

**Hubbard's Assignment of Error No. VI**

**The trial court erred in finding that codified ordinance 121.04 is applicable to plaintiff-appellant and similarly situated council members.**

**Holtsberry's Assignment of Error No. V**

**The trial court erred in granting summary judgment in favor of appellee on the issue of the president of council's entitlement to**

**public subsidized health insurance when it was a matter of law that the appellant should have been granted summary judgment.**

**Hubbard's Assignment of Error No. I**

**The trial court erred in granting defendant-appellee's motion for summary judgment in that such judgment is against the manifest weight of the evidence.**

**Hubbard's Assignment of Error No. VIII**

**The trial court erred in not granting plaintiff-appellant's motion for summary judgment in that there was no genuine issue as to material fact and that plaintiff-appellant was entitled to judgment as a matter of law.**

{¶40} In his fifth assignment of error, Hubbard argues that the trial court erred by failing to conclude that council members' group health insurance premiums were established by ordinance. Hubbard argues that the prior codified ordinances detailing council members' eligibility for group health insurance have since been replaced by the BORMA plan document, which allows council members to participate on similar terms as regular full-time city employees.

{¶41} In his fourth assignment of error, Hubbard argues that the trial court erred by concluding that Section 2.07 does not prohibit an in-term reduction in salary. In particular, Hubbard argues that Section 2.07 must be harmonized with general laws concerning the same issue, all of which prohibit in-term reductions in salary. He also argues that the trial court erred by failing to address the effective

date of Codified Ordinance 121.04, and the earliest effective date is January 1, 2008.

{¶42} In his sixth assignment of error, Hubbard argues that the trial court erred by concluding that Codified Ordinance 121.04 applied to him and similarly situated council members. In particular, Hubbard argues that the ordinance was not effective prior to the deadline established by Section 2.07 of the Charter, and the ordinance is not applicable since the Employee Health Care Cost Containment Committee ("EHCCCC") has not changed the BORMA plan.

{¶43} In his first assignment of error, Hubbard argues that the trial court erred in granting Defiance summary judgment since the same was against the manifest weight of the evidence. In his eighth assignment of error, Hubbard argues that the trial court erred by failing to grant his cross-motion for summary judgment, because Codified Ordinance 121.04 does not apply to him since the City Charter prevents in-term changes in compensation.

{¶44} In his fifth assignment of error, Holtsberry argues that the trial court erred in granting Defiance summary judgment since Ordinance No. 4994, requiring council members to pay for their own health insurance, does not apply to him as president of council.

{¶45} Many of the issues raised by Hubbard in his fourth, fifth, and sixth assignments of error are more properly characterized as "issues of law," that

should have been raised under his first and eighth assignments of error relating to the grant of summary judgment. Since these issues are all related to the trial court's grant of summary judgment, we will review them as part of our discussion of the trial court's grant of summary judgment.

{¶46} We review a decision to grant summary judgment de novo. *Doe v. Shaffer*, 90 Ohio St.3d 388, 390 (2000). Summary judgment is proper where there is no genuine issue of material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds can reach but one conclusion when viewing the evidence in favor of the non-moving party, and the conclusion is adverse to the non-moving party. Civ.R. 56(C); *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.*, 69 Ohio St.3d 217, 219 (1994).

{¶47} Before proceeding to the appropriateness of the trial court's grant of summary judgment in favor of Defiance, we must address a preliminary evidentiary issue. Since we review summary judgment de novo, the trial court erred by excluding the public records in Holtsberry's case, and the cases were consolidated below and consolidated on appeal, we will review all of the public records for purposes of reviewing the trial court's grant of summary judgment.

{¶48} The relevant history concerning the health care benefits for city council members is not in dispute. On March 19, 1968, city council passed

Ordinance No. 2538, known as Codified Ordinance 35.16, which provided, in pertinent part:

> The Board of Control of the City is hereby authorized to accept proposals and enter into a contract or contracts for group * * * insurance for employees and elected officials of the City and their dependents. Each full-time regular employee and each full-time elected official of the City, working a minimum of thirty-two (32) hours per week, shall be eligible for insurance under the group insurance contract. The City shall pay the full costs of insurance on employees and full-time elected officials out of the general administration fund.

(Defiance MSJ, Doc. No. 66, Ex. 4, attachment 1). Section 35.16 was amended in 1970 and 1972, but the benefit to participate in the group health insurance contract remained limited to full-time elected officials working a minimum of 32 hours per week. (Hubbard MSJ, Doc. No. 38, Ex. J); (Holtsberry Complaint, Ex. A).[3]

{¶49} On November 8, 1983, the voters approved the city charter. (Holtsberry Complaint, Ex. B).

---

[3] It appears that Section 35.16 was originally enacted by Ordinance No. 1892 (eff. 5/1/59), though the substance of the section as it existed then is not in the record. (Holtsberry Complaint, Ex. A). This section later became known as Section 35.161, but it was deleted from the code sometime between 1979 and 1988. (1/25/07 Opinion, Holtsberry Complaint, Ex. E). Although not clear from the record, it appears that Codified Ordinance 35.161 was eliminated sometime after Defiance adopted its Charter and council established the EHCCCC. Defiance agreed that Section 35.161 was no longer applicable and had been superseded in the proceedings below.

{¶50} On September 15, 1987, Defiance formed the Employee Health Care Cost Containment Committee ("EHCCCC") to act as the city's representative to take bids and determine heath care coverage for city employees. (Defiance MSJ, Doc. No. 66, Ex. 5, attachment 1); (Resolution No. 2071, Holtsberry Complaint, Ex. C).

{¶51} On December 13, 1988, council passed Ordinance No. 4994, which established the annual salary of council members on and after January 1, 1990. (Defiance MSJ, Doc. No. 66, Ex. 4, attachment 2). The ordinance provided, in pertinent part, "[t]hat any Council member who chooses to join in the health benefit package of the City of Defiance shall be allowed to do so at their own expense." (*Id.*).

{¶52} On May 17, 1989, council passed and the mayor signed Ordinance No. 5044 entitled "AN ORDINANCE AUTHORIZING THE MAYOR TO ENTER INTO A CONTRACT WITH BUCKEYE OHIO RISK MANAGEMENT ASSOCIATION (BORMA) FOR BASIC, MAJOR MEDICAL AND DENTAL HEALTH BENEFITS FOR ALL ELIGIBLE CITY EMPLOYEES." (*Id.*, Ex. 4, attachment 3).[4]

{¶53} On or about August 1, 1989, Defiance entered into a contract with BORMA to provide group health insurance for all eligible city employees.

---

[4] Ordinance No. 5044 stated that the EHCCCC negotiated the BORMA agreement and recommended the same to City Council. (Defiance MSJ, Doc. No. 66, Ex. 4, attachment 3).

"Eligible" city employees were defined under the plan as: "[a]ll *full-time employees* regularly scheduled to work at least thirty-two (32) hours per week *or* members of the City Council shall be eligible to enroll for coverage under the *Plan.* This does not include temporary or seasonal *employees*." (Holtsberry Aff., Doc. No. 40); (Hubbard MSJ, Doc. No. 38, Exs. F, G) (emphasis added).[5]

{¶54} On December 20, 1994, council passed Ordinance No. 5612, "AN ORDINANCE FIXING THE COMPENSATION OF ELECTED OFFICIALS * * *," including the mayor, council members, and council president, on and after January 1, 1996. (Doc. No. 73, attached). In pertinent part, the ordinance provided "[t]he annual salary of the President and Members of Council for terms commencing prior to January 1, 1996, shall be fixed by Ordinance 4994 * * *." (*Id*.). The ordinance did not mention group health insurance, however. (*Id*.).

{¶55} On October 20, 1998, council passed Ordinance No. 5970, "AN ORDINANCE ESTABLISHING THE COMPENSATION OF ELECTED OFFICIALS," including the mayor, city council members, and city council president, for the years 2000 through 2005. (Defiance MSJ, Doc. No. 66, Ex. 4, attachment 4). Like Ordinance No. 5612 before it, Ordinance No. 5970 also did not mention group health insurance. (*Id*.).

---

[5] A copy of the 1989 BORMA plan is not in the record, but Holtsberry and Hubbard both averred that it defined "eligible" city employees the same as the 2002 and 2007 amended versions in the record to include members of City Council. (Doc. Nos. 40, 68, 70).

**{¶56}** In 1999, during his campaign for Mayor, Fred Schultz represented to the voters that he wanted all elected city officials to be justly compensated for their hard work. (Schultz Aff. Doc. No. 76). To that end, in 2002 and after being elected, Mayor Schultz included a $47,530.00 appropriation in the budget for "employee benefits," including group health insurance for council members, which passed on March 26, 2002. (*Id.*); (Ordinance No. 6281, Doc. No. 73, attached). The city budgets for 2003, 2004, 2005, and 2006 included similar appropriations for council members' BORMA group health insurance. (Ordinance Nos. 6368, 6450, 6518, and 6634, Doc. No. 73, attached).

**{¶57}** Beginning in 2005, however, a new mayor, Robert Armstrong, expressed alarm at the rising cost of health insurance provided to council members. (Holtsberry Aff., Doc. No. 68). Although he included an appropriation for this benefit in the 2006 budget, Mayor Armstrong submitted a proposed budget for 2007, which allocated no funding for council members' health insurance. (*Id.*). Mayor Armstrong also threatened to veto any appropriations ordinance that allocated funds for the payment of council members' health insurance. (*Id.*). On December 19, 2006, council passed Ordinance No. 6886, an appropriation ordinance for 2007, which allocated zero funding for council members' health insurance. (*Id.*); (Doc. No. 73, attached).

{¶58} On February 6, 2007, council passed Ordinance No. 6768 and codified Section 121.04 of the Codified Ordinances of the City of Defiance, entitled "AN ORDINANCE ESTABLISHING THE PREMIUM CO-PAYMENT OBLIGATION OF MEMBERS OF COUNCIL ELECTING TO PARTICIPATE IN MUNICIPAL INSURANCE PLANS." (Defiance MSJ, Doc. No. 66, Ex. 4, attachment 5). Section 121.04(A) of the Codified Ordinances provides, in pertinent part, "Members of Council electing to enroll in [BORMA] * * * or similar insurance coverage for the benefit of Municipal employees and/or officials shall pay 100% of the premiums assessed by the underwriter for coverage extended to the Member of Council and his or her insured dependents." (*Id.*). Section 4 provided that "[t]his Ordinance shall be effective on the earliest date permitted by Section 2.07 of the Charter of the City of Defiance, Ohio." (*Id.*).

{¶59} Since the passage of Ordinance No. 6768, Defiance has not paid for council members' BORMA group health insurance premiums. Instead, council members, like Holtsberry and Hubbard, who desired to maintain their BORMA group health insurance were required to pay 100% of the plan premiums. To that end, council passed appropriation ordinances for 2008, 2009, and 2010, all of which omitted funding for council members' BORMA group health insurance. (Ordinance Nos. 6752, 7005, 7100, Doc. No. 73, attached).

**{¶60}** Hubbard elected to continue receiving BORMA group health insurance in 2007, costing $13,815.00 for himself and his dependents, and in 2008, costing $14,115.60 for himself and his dependents. (Complaint, Doc. No. 1). In 2009, Hubbard maintained BORMA group health insurance for himself for a total out-of-pocket cost of $5,392.08 and obtained private insurance for his dependents costing $4,665.72. (*Id*.). Holtsberry also maintained BORMA group health insurance during 2007 and 2008 but discontinued it in 2009. (Holtsberry Complaint, Trial Court Case No. 11-CV-41357, Ex. G). Appellants sent letters to Defiance requesting reimbursement for the cost of their BORMA group health insurance to no avail. (Hubbard Complaint, Doc. No. 1, Exs. A-C); (Hubbard Amended Complaint, Doc. No. 12, Exs. B-D).

**{¶61}** Afterwards, Hubbard and Holtsberry filed complaints against Defiance seeking declaratory judgment. Hubbard requested that the trial court declare that Defiance: illegally failed to appropriate money for his BORMA group health insurance premiums; illegally enacted Codified Ordinance 121.04 in violation of Section 2.07 of the Charter; and, illegally terminated his BORMA group health insurance benefit from January 2007 until December 31, 2009. Similarly, Holtsberry alleged that Defiance reduced his compensation during the term of his office as council president in violation of R.C. 731.07 and Section 2.07 of the Charter of the City of Defiance. Holtsberry also alleged promissory

estoppel based upon the city law director's representations that terminating council members' BORMA group health insurance benefit was unlawful.

{¶62} The trial court disagreed with Hubbard and Holtsberry, concluding that the Charter requires that council members' salary be established by ordinance; "salary" includes other compensation such as BORMA group health insurance; Ordinance No. 5970, establishing council members' salary, did not provide for an insurance benefit; and therefore, Hubbard and Holtsberry were not entitled to BORMA group health insurance. (Sept. 14, 2012 JEs, Doc. Nos. 82-83). The trial court further concluded that council had overcompensated Hubbard and Holtsberry by previously paying their BORMA group health insurance premiums. (*Id.*). The trial court further reasoned that, since neither Hubbard nor Holtsberry were entitled to BORMA group health insurance, Codified Ordinance 121.04 did not change their salary and was validly enacted. (*Id.*).

{¶63} The first issue, raised in Hubbard's fifth assignment of error, is whether or not council members were entitled to participate in the BORMA group health insurance plan. We answer this question in the affirmative.

{¶64} Defiance is a Home Rule Charter Municipality under Article XVIII of the Ohio Constitution. Determining the salaries of municipal officers is a matter within the powers of local self-government. *Loux v. Lakewood*, 120 Ohio App. 415 (8th Dist.1963), appeal dismissed by 176 Ohio St. 154 (1964). *See also*

*Mansfield v. Endly*, 38 Ohio App. 528, 536-538 (5th Dist.1931) (non-charter city).

To that end, Section 2.07 of the Defiance City Charter provides:

> The salary of Council members shall be established by ordinance, but no member of Council, at the time of the enactment of any ordinance increasing such salaries, shall receive the benefit of any such increase during his or her then current term of office. Any change in the salary of members of Council shall be effective commencing with the terms of office of members of Council elected at the next regular Municipal election; said ordinance providing for a change in salary shall be passed on or before the filing deadline for the declaration of party candidacy for members of Council.

(Defiance Charter, Holtsberry Complaint, Ex. B). Both parties cited *State ex rel. Parsons v. Ferguson* in the proceedings below for the proposition that the term "salary" in Section 2.07 of the Charter should be interpreted synonymously with the term "compensation," including BORMA group health insurance.[6]  46 Ohio St.2d 389 (1976).   As the Court in *Parsons*, noted:

> Fringe benefits, such as [premiums for a group medical plan], are valuable perquisites of an office, and are as much a part of the compensations of office as a weekly pay check. It is obvious that an

---

[6] We also note that Section 2.07 is, in fact, entitled "Compensation" further evidencing the fact that it encompasses more than salary alone.

office holder is benefitted and enriched by having his insurance bill paid out of public funds, just as he would be if the payment were made directly to him, and only then transmitted to the insurance company.

*Id*. at 391. Accordingly, the parties agreed that Section 2.07 of the Charter required that council members' BORMA group health insurance be established by ordinance. However, the parties disagreed that council had, in fact, established council members' BORMA group health insurance benefit by ordinance.

{¶65} Defiance argued, in part, that council members' BORMA group health insurance was not established by ordinance because Ordinance No. 5970, which established council members' salaries, did not mention group health insurance. The trial court agreed. We do not agree, however, because the trial court's interpretation of Section 2.07 effectively added the terms "a single" or "the same" before the word "ordinance," which is contrary to well-established rules of statutory interpretation. Section 2.07's plain language does not require that council members' salary/compensation be established by "a single" or "the same" ordinance. To interpret a municipal charter provision, courts must apply general rules of statutory construction. *State ex rel. Commt. for Proposed Ordinance to Repeal Ordinance No. 146-02, West End Blight Designation, v. Lakewood*, 100 Ohio St.3d 252, 2003-Ohio-5771, ¶ 19, citing *Commt. for Charter Amendment,*

*City Trash Collection*, 97 Ohio St.3d 100, 2002-Ohio-5302, ¶ 28. When interpreting a statute, courts may not add or delete words. *See e.g. State ex rel. Lorain v. Stewart*, 119 Ohio St.3d 222, 2008-Ohio-4062, ¶ 36 (citations omitted). Section 2.07 only requires that council members' BORMA group health insurance benefit be established by ordinance, so any ordinance will suffice.

{¶66} Defiance alternatively argues that Ordinance No. 4994 clearly established that council members participating in BORMA must do so at their own expense. Ordinance No. 4994 was enacted on December 15, 1988 and specified council members' salaries. The ordinance also required council members to pay 100% of the premium to participate in BORMA. However, Ordinance No. 4994 was temporary and subsequently replaced by Ordinance No. 5612 on December 20, 1994, which did *not* include the same stipulation regarding council members' participation in BORMA. Ordinance No. 5612 established council members' salaries for 1996 through 1999, and specifically stated that Ordinance No. 4994 would govern the salaries of council members whose terms commenced prior to January 1, 1996. Ordinance No. 5612 was also temporary and subsequently replaced by Ordinance No. 5970 on October 20, 1998, which established council members' salaries for 2000 through 2005. Ordinance No. 5970, like Ordinance No. 5612 before it, also failed to include any provision concerning council members' group health insurance benefit. Ordinance No. 5612 was also

temporary and subsequently replaced by Ordinance No. 7012, which established council members' salaries for 2010 through 2015. Ordinance No. 7012, like Ordinance Nos. 5790 and 5612 before it, did not include any provision concerning council members' group health insurance benefit. Since Ordinance No. 4994 has been superseded by multiple other salary ordinances, we are not persuaded that Hubbard and Holtsberry's claims are defeated by this ordinance.

{¶67} Holtsberry alternatively argues in his fifth assignment of error that Ordinance No. 4994 did not apply to him because it did not mention "president of council." Holtsberry points out that Section 2.06 of the Charter identifies president of council as a separate office from council members with distinct duties. While the Charter unquestionably provides for a separate office of "president of council" who serves a distinct role, president of council is nonetheless a "council member" for purposes of Section 2.07 governing compensation. If this were not so, president of council would not be entitled to any compensation since Section 2.07 is the only Charter section authorizing compensation. This explains why Ordinance Nos. 5612, 5790, and 7012 establish the same salaries for president of council as other council members. Although Ordinance No. 4994 did not specifically refer to "president of council," it is clear that council intended the term "council member" to include "president of council" since Section 3 of Ordinance No. 5612, which replaced Ordinance No. 4994,

provided that "[t]he annual salary of the President and Members of Council for terms commencing prior to January 1, 1996 shall be as fixed by Ordinance 4994[.]" The fact that council used only the term "council member" in Ordinance No. 4994 further evidences the fact that the president of council is governed under Section 2.07 of the Charter for salary/compensation purposes. Consequently, Holtsberry's BORMA group health insurance benefit is not dependent upon his position as president of council but his status as a "council member" under Section 2.07—the very same entitlement Hubbard claims.

{¶68} Hubbard claims that council members' group health insurance benefit was established by Ordinance No. 5044, which authorized the mayor to enter into a contract with BORMA. We agree. Council authorized the mayor to enter into the BORMA contract after the EHCCCC, a committee authorized by Resolution No. 2071 and delegated authority to take bids and determine heath care coverage for city employees, evaluated and approved the BORMA plan.[7] Significantly, the BORMA plan defined "eligible" city employees to include council members. While the text of Ordinance No. 5044 did not contain the whole BORMA plan—a plan that is over 63 pages—the term "establish" in Section 2.07 of the Charter does not require such an overly-technical and burdensome result. It

---

[7] That city council was required to establish the salary/compensation of its members by ordinance did not prevent council "from appointing agents and empowering them to make contracts, or from appointing committees and investing them with duties of a ministerial or administrative character." *Hengst v. Cincinnati*, 9 Ohio Dec. 730, *3 (Ohio Super.1899).

is enough that Ordinance No. 5044 authorized the BORMA plan, which included council members, to conclude that council members' group health insurance benefit was "established" by ordinance.

{¶69} Since we have determined that council members' BORMA group health insurance was established by ordinance within the meaning of Section 2.07, we sustain Hubbard's fifth assignment of error. We overrule Holtsberry's fifth assignment of error to the extent it relies upon his status as president of council.

{¶70} The second question presented by Hubbard's fourth and sixth assignments of error is whether Defiance lawfully terminated council members' BORMA group health insurance, effective January 1, 2007, by enacting Codified Ordinance 121.04. Hubbard presents three separate reasons Defiance did not. First, Hubbard argues that Codified Ordinance 121.04 violated Section 2.07 because its effective date was March 8, 2007, well past the date required by Section 2.07. Second, he argues that the ordinance cannot be applied to council members, like him, whose terms were January 1, 2006 through December 31, 2009 since its application would constitute an in-term decrease in compensation prohibited under Section 2.07. Third, he argues that Codified Ordinance 121.04 is not applicable to him since the EHCCCC has not terminated or changed council members' group health insurance coverage. Fourth, he argues that even if

Ordinance 121.04 was validly enacted, January 1, 2008 was the earliest effective date for its application.

{¶71} Hubbard's first argument is refuted by Section 2.07's plain language. Section 2.07 provides, in pertinent part: "said ordinance providing for a change in salary shall be *passed* on or before the filing deadline for the declaration of party candidacy for members of Council." (Emphasis added). Contrary to Hubbard's argument, it is the passage date and not the effective date of the ordinance that matters. Hubbard admits that the ordinance was passed prior to the February 22, 2007 deadline for the declaration of party candidacy for council members; therefore, the ordinance was timely passed in accordance with Section 2.07.

{¶72} Hubbard's second argument also lacks merit. Section 2.07 of the Charter provides, in relevant part:

> * * * no member of Council, at the time of the enactment of any ordinance *increasing* such salaries, shall receive the benefit of any such increase during *his or her* then current term of office. *Any change in the salary of members of Council shall be effective commencing with the terms of office of members* of Council elected at the next regular Municipal election;

(Emphasis added). Section 2.07's plain language establishes two different effective dates for salary/compensation changes depending upon whether the

change is an increase or decrease. The effective date for salary increases is governed by the first sentence of Section 2.07, which provides: "* * * no *member* of Council, at the time of the enactment of any ordinance *increasing* such salaries, shall receive the benefit of any such *increase* during *his or her* then current *term* of office." (Emphasis added). Since this language refers to "no member" (singular) of Council" and "his or her" (singular) then term (singular) of office," the effective date of a salary/compensation increases depends upon each council member's then term of office. Practically speaking, then, increases in salary/compensation commence at different times for different council members depending upon their individual term of office.

{¶73} The effective date of salary/compensation decreases, on the other hand, is governed by the second sentence of Section 2.07, which provides: "[a]ny change in the salary of *members* of Council shall be effective commencing with the *terms* of office of *members* of Council elected at the next regular Municipal election[.]" (Emphasis added). This is significantly different than the commencement date for salary/compensation increases governed by the first sentence of Section 2.07. Rather than referring to a "member of Council" (singular) and "his or her (singular) then term (singular) of office," the second sentence of Section 2.07 refers to "members of Council" (plural) and "terms (plural) of office of members" (plural); therefore, the effective date of

salary/compensation decreases is not dependent upon the particular term of any individual council member, like the effective date of salary/compensation increases under the first sentence of Section 2.07. Rather, the effective date of salary/compensation decreases is simultaneous for all members of council—January 1st of an even-numbered year following the next regular municipal election when the newly elected members take office—regardless of whether that results in an in-term decrease in salary/compensation for particular council members who may not be up for election in the next regular municipal election.

{¶74} Although it could be argued that the phrase "[a]ny change in salary" appearing in the second sentence of Section 2.07 refers to increases *and* decreases in salary/compensation, this interpretation would create contradictory results for salary/compensation increases. The more sensible interpretation is that the first sentence of Section 2.07 governs increases in salary/compensation, and the second sentence of Section 2.07 governs all other changes, including decreases.[8] Decreases in salary/compensation are clearly not governed by the first sentence of Section 2.07 since it plainly refers to "increases." Instead, decreases in salary/compensation fall under the category of "[a]ny change in salary" used in the second sentence of Section 2.07. "Statutes must be construed, if possible, to operate sensibly and not to accomplish foolish results." *State ex rel. Saltsman v.*

---

[8] It is possible to have neutral changes to salary in salary/compensation. For example, council could decrease their salary by $1,000.00 per year but provide for a $1,000.00 per year in travel costs. While this is neither an increase nor a decrease in overall compensation, it is a "change" in salary/compensation.

*Burton*, 154 Ohio St. 262, 268 (1950). It is perfectly reasonable to conclude that the drafters of the Charter wanted to prevent council members from increasing their salary/compensation during their current terms of office for their own self-interest. As written, Section 2.07 requires any council member who voted for a salary/compensation increase to stand for reelection *before* he or she can gain the benefit. This same concern, however, is not present for decreases in salary/compensation. The fact that a salary/compensation decrease applies to *all* council members simultaneously also prevents the majority on council from punishing the minority for political reasons. If the majority passes an ordinance decreasing salary/compensation, they must also suffer the decrease in salary/compensation at the same time as members in the minority, regardless of whether members in the majority are in-term when the decrease commences. Based upon the foregoing, we conclude that the second sentence of Section 2.07 governs decreases in salary/compensation.

{¶75} Hubbard argues that Section 2.07 of the Charter must be harmonized with other existing general laws forbidding in-term decreases in salary/compensation for municipal officials, county officials, general assembly members, state officials, and judges. R.C. 731.07; R.C. 325.22; Article II, Section 20 of the Ohio Constitution; Article III, Section 19 of the Ohio Constitution; and, Article IV, Section 6(b) of the Ohio Constitution. We disagree.

{¶76} Provisions in a municipal charter must be harmonized with general laws relating to the same subject whenever possible. *State ex rel. The Ryant Commt. v. Lorain Cty. Bd. of Elections*, 86 Ohio St.3d 107, 112 (1999). However, if a portion of a municipal charter expressly conflicts with parallel state law in a matter of local self-government, the charter provision prevails. *State ex rel. Ditmars v. McSweeney*, 94 Ohio St.3d 472, 475 (2002), citing *State ex rel. Fenley v. Kyger*, 72 Ohio St.3d 164, 165 (1995), quoting *State ex rel. Lightfield v. Indian Hill*, 69 Ohio St.3d 441, 442 (1994); Sections 3 and 7, Article XVIII, Ohio Constitution. Determining the salaries of municipal officers is a matter within the powers of local self-government. *Loux*, 120 Ohio App. 415, appeal dismissed by 176 Ohio St. 154. *See also Endly*, 38 Ohio App. at 536-538 (non-charter city).

{¶77} While all of the general laws cited by Hubbard prohibit decreases in salary/compensation for elected officials during their current term of office, the only general law governing municipal legislative officers is R.C. 731.07, which provides:

> The salary of any officer of a city shall not be *increased or diminished* during the term for which *he* was elected or appointed. This section does not prohibit the payment of any increased costs of continuing to provide the identical benefits provided to *an officer* at the commencement of *his* term of office.

-41-

(Emphasis added). Comparing R.C. 731.07's language to Section 2.07 of the Defiance Charter, it is apparent that the two provisions are not the same. As we explained above, Section 2.07 provides different commencement dates for salary/compensation changes depending upon whether the change is an increase or a decrease (or other change).[9] R.C. 731.07, on the other hand, provides *one* commencement date for both increases *and* decreases in compensation, which is tethered to the particular term of the individual municipal legislative officer. At the time of the Charter's drafting, the current version of R.C. 731.07 had already been enacted (1980 S.B. 299, eff. 1-9-81); therefore, we must presume that the charter's drafters knew the general law (R.C. 731.07) on this issue and consciously deviated from it. *See e.g. Carey v. Commrs. of Montgomery County*, 19 Ohio 245, 271 (1850) ("Legislatures are presumed to know, when passing any act, what the existing law is."); *East Ohio Gas Co. v. Akron*, 2 Ohio App.2d 267, 270 (9th Dist.1965). Since Section 2.07 conflicts with R.C. 731.07 and the salaries/compensation of local officers is a matter of local self-government, the former need not be harmonized with the latter, and the former prevails herein.

{¶78} Hubbard's third argument also lacks merit. While council delegated a portion of its authority to the EHCCCC to take bids and determine heath care coverage for city employees, council retained its authority via Section 2.07 of the

---

[9] See Fn. 8, *supra*.

Charter to change the health care benefit for its members. It is also important to note that council, not the EHCCCC, ultimately authorized the BORMA plan by passing Ordinance No. 5044. If council has the power to create that benefit (which Hubbard admits), it logically follows that council has the power to eliminate that benefit—absent any action by the EHCCCC.

{¶79} Fourth, Hubbard argues that even if Codified Ordinance 121.04 was validly enacted, its earliest effective date was January 1, 2008. We agree.

{¶80} Ordinance No. 6768, now known as Codified Ordinance 121.04, was passed and approved on February 6, 2007. Section 4 of the ordinance provides: "[t]his ordinance shall be effective on the earliest date permitted by Section 2.07 of the Charter of the City of Defiance, Ohio." Pursuant to the second sentence of Section 2.07, decreases in salary/compensation shall be "effective commencing with the terms of office of members of Council elected at the next regular Municipal election[.]" Section 2.01 of the Charter provides that "[a]ll members [of Council] shall be elected for four (4) year terms, beginning January 1 following the Municipal elections * * *." Municipal elections for city council members are held in each odd-numbered year; therefore, the terms of office for council members commence on January 1 of each even-numbered year. R.C. 731.03(A). The next municipal election after the passage of the ordinance was held in November 2007. The terms of office of members elected during that

municipal election began on January 1, 2008; therefore, January 1, 2008 is the earliest effective date of Codified Ordinance 121.04.

{¶81} It is undisputed that Defiance applied Codified Ordinance 121.04 effective January 1, 2007 to deny both Holtsberry and Hubbard BORMA group health insurance. While Defiance's enactment of Codified Ordinance 121.04 did not violate Section 2.07 of the Charter, its *application* of the ordinance *prior to* January 1, 2008 was unlawful since Section 2.07 of the Charter establishes January 1, 2008 as the effective date of the ordinance. Therefore, we sustain Hubbard's fourth assignment of error and Holtsberry's fifth assignment of error to the extent that Defiance applied Codified Ordinance 121.04 prior to January 1, 2008. Since we have determined, however, that council's enactment of Codified Ordinance 121.04 was not in violation of Section 2.07 of the Charter, we overrule Hubbard's sixth assignment of error.

{¶82} Since Defiance unlawfully applied Codified Ordinance 121.04 prior to its effective date of January 1, 2008, we must also sustain Hubbard's first and eighth assignments of error and Holtsberry's fifth assignment of error concerning the trial court's grant of summary judgment. Hubbard and Holtsberry's declaratory claim for entitlement to BORMA group health insurance for 2007 has merit, and they were entitled to a declaration of the same. However, Defiance's application of Codified Ordinance 121.04 on January 1, 2008 and thereafter was

lawful under Section 2.07 of the Charter; and therefore, Hubbard and Holtsberry were not entitled to a declaration of entitlement to BORMA group health insurance for January 1, 2008 and thereafter. We remand this matter for the trial court to grant Hubbard and Holtsberry summary judgment as it relates to their claim for BORMA group health insurance for 2007, and for the trial court to grant Defiance summary judgment as it relates to Hubbard and Holtsberry's claim for BORMA group health insurance for January 1, 2008 forward.

**{¶83}** Hubbard's fifth assignment of error is, therefore, sustained.

**{¶84}** Hubbard's first, fourth, and eighth assignments of error are sustained only to the extent that Codified Ordinance 121.04's effective date is January 1, 2008 according to Section 2.07 of the Charter, and Defiance unlawfully applied Codified Ordinance 121.04 to Hubbard prior to its effective date.

**{¶85}** Hubbard's sixth assignment of error is, therefore, overruled.

**{¶86}** Holtsberry's fifth assignment of error is sustained only to the extent that Codified Ordinance 121.04's effective date is January 1, 2008 according to Section 2.07 of the Charter, and Defiance unlawfully applied Codified Ordinance 121.04 to Holtsberry prior to its effective date.

### Hubbard's Assignment of Error No. III

**The court erred by applying codified ordinance 35.16 to plaintiff-appellant's claims.**

**{¶87}** In his third assignment of error, Hubbard argues that the trial court erred in applying Codified Ordinance 35.16 to his claims. Our conclusion that Hubbard is entitled to summary judgment as it relates to his entitlement to BORMA group health insurance benefits for 2007 renders this assignment of error moot, and we decline to address it. App.R. 12(A)(1)(c).

**{¶88}** Having found error prejudicial to the appellants herein in the particulars assigned and argued, we reverse the judgments of the trial court and remand for further proceedings consistent with this opinion.

*Judgments Reversed and*
*Cause Remanded*

**WILLAMOWSKI and ROGERS, J.J., concur.**

**/jlr**